**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

AZIM CHOUDHRY,
            *Defendant-Appellant.*

No. 05-10810

D.C. No.
CR-05-00179-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
July 28, 2006—San Francisco, California

Filed August 25, 2006

Before: Gilbert S. Merritt,* Andrew J. Kleinfeld, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Paez

*The Honorable Gilbert S. Merritt, Senior Judge, United States Court
Appeals for the Sixth Circuit, sitting by designation.

10217

**COUNSEL**

Mark Rosenbush, San Francisco, California, for the defendant-appellant.

Derek D. Owens, Special Assistant United States Attorney, and Barbara J. Valliere, Assistant United States Attorney, United States Attorney's Office, San Francisco, California, for the plaintiff-appellee.

**OPINION**

PAEZ, Circuit Judge:

Azim Choudhry ("Choudhry") appeals the district court's denial of his pre-trial motion to suppress evidence. Upon observing a vehicle parked illegally, two San Francisco police officers performed an investigatory traffic stop of the vehicle, in which Choudhry was a passenger. During a subsequent search of the vehicle, the officers discovered a gun under the front passenger seat. Choudhry was indicted for possession of a firearm by a felon, a violation of 18 U.S.C. § 922(g). Alleging that the search and seizure violated the Fourth Amendment, Choudhry filed a motion to suppress the gun.

In challenging the lawfulness of the stop, Choudhry argued that a civil parking offense that is enforced through an administrative process could not, standing alone, justify an investigatory stop. Choudhry also argued that the other circumstances surrounding the stop were insufficient to support a finding of reasonable suspicion and that the stop therefore violated the Fourth Amendment. Other than noting the parking violation as one fact in its analysis of the events leading up to the stop, the district court did not address the merits of Choudhry's argument regarding the parking violation. Although we affirm the denial of the motion to suppress, we do so on a narrower ground than the one advanced by the district court. Because parking infractions constitute traffic violations under California's Vehicle Code and local laws enacted pursuant to the Vehicle Code, and because the officers had the authority to enforce the particular violation at issue, we hold that a civil parking violation under California's Vehicle Code falls within the scope of the Supreme Court's decision in *Whren v. United States*, 517 U.S. 806 (1996). Accordingly, we conclude that the parking violation provided the officers with reasonable suspicion to conduct an investigatory stop of the vehicle. In light of our disposition, we need not address

the other factors that the district court relied upon to deny the motion.

## I.  BACKGROUND

Just after midnight on February 7, 2005, San Francisco Police Officers Silver and Chan were patrolling Bernal Heights Boulevard. The officers observed a vehicle parked illegally near the entrance of Bernal Heights Park, an area designated as a no-stopping/tow-away zone between the hours of 10 PM and 6 AM every day.[1] Because the officers were unable to determine whether the car was occupied, Officer Silver used the police car's spotlight to illuminate the vehicle from behind. In response to the sudden spotlight, the vehicle's occupants, Sonja Alvarado ("Alvarado") and Choudhry, made "hurried movements." According to Officer Silver, these movements led the officers to believe that either a sexual encounter or "some other possibly illegal act" was taking place. In a declaration filed in opposition to the motion, Officer Silver explained that the officers decided to investigate further and turned on their emergency lights "in order to conduct an investigatory stop." Alvarado, the driver of the vehicle, turned on the vehicle's engine and began to pull away. After both police officers exited their patrol car and commanded her to stop, she did.

While Officer Chan questioned Alvarado, Officer Silver spoke with Choudhry through the passenger side window. Having determined that Alvarado's license had been sus-

---

[1]The car was parked in violation of The City and County of San Francisco Municipal Code, Traffic Code ("San Francisco Traffic Code" or "S.F. Traffic Code") § 32. That section requires the Board of Supervisors to pass resolutions designating restricted parking or stopping areas and to erect signs giving notice of those areas. It further states: "Any person violating any of the class of resolutions now or hereinafter in effect, which are referred to in the following subsections of this Section, shall be guilty of an infraction." Subsection (b) refers to "[r]esolution[s] prohibiting parking on any street or alley." S.F. Traffic Code § 32(b).

pended and that there were two active warrants outstanding for her arrest, Officer Chan placed Alvarado under arrest. Because Officer Silver recognized the "faint odor of burnt marijuana," he suspected that Choudhry possessed marijuana and ordered Choudhry out of the car. As Officer Silver performed a pat-down search, Choudhry admitted that he had marijuana in the pocket of his pants. Officer Silver found marijuana in Choudhry's front pants pocket and placed Choudhry in the police car. Choudhry then informed Officer Silver that he had found a gun, which he had placed inside Alvarado's car. Officer Silver discovered the gun under the passenger seat where Choudhry had been sitting.

The Grand Jury subsequently indicted Choudhry for a violation of 18 U.S.C. § 922(g), possession of a firearm by a felon. Claiming that the detention and search violated the Fourth Amendment, Choudhry filed a motion to suppress the evidence that the officers seized as a result of the stop. As he does in this appeal, Choudhry advanced two central arguments in support of his motion: first, Choudhry argued that because California has decriminalized parking offenses, the police could not perform an investigatory stop on the basis of the parking violation alone; and second, Choudhry asserted that the other circumstances surrounding the stop were insufficient to constitute reasonable suspicion.

The district court denied Choudhry's motion. In its oral decision, the court declined to determine whether the parking violation was enough, standing alone, to justify the stop. Instead, the court concluded that the totality of the circumstances surrounding the stop were sufficient for the officers to have formed an articulable, reasonable suspicion that Alvarado and Choudhry were engaged in criminal activity. The district court relied on the following circumstances: (1) the parking violation, (2) Alvarado's brief attempted "flight," (3) the couple's hurried movements after the officers turned on the spotlight, and (4) Officer Silver's belief that Bernal Heights was a high-crime area.

After the district court denied his suppression motion, Choudhry entered a conditional plea of guilty to the indictment, preserving his right to appeal the denial of his motion. The district court sentenced Choudhry to 57 months and he timely appealed. On appeal, Choudhry re-asserts that the parking violation was insufficient alone to justify an investigatory stop and the totality of the circumstances did not constitute reasonable suspicion.

## II. JURISDICTION AND STANDARDS OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review *de novo* whether the police had reasonable suspicion to make an investigatory stop, a mixed question of law and fact. *See United States v. Manzo-Jurado*, 452 F.3d 1028, 1033 (9th Cir. 2006). We may affirm the denial of the motion to suppress on any basis supported by the record. *See United States v. Henderson*, 241 F.3d 638, 649 n.1 (9th Cir. 2000). We review the district court's findings of fact for clear error. *See United States v. Lopez-Soto*, 205 F.3d 1101, 1103 (9th Cir. 2000).

## III. DISCUSSION

### A.

**[1]** The officers' investigatory stop of Alvarado's vehicle implicates the Fourth Amendment "because stopping an automobile and detaining its occupants constitute a seizure . . . even though the purpose of the stop is limited and the resulting detention quite brief." *Delaware v. Prouse*, 440 U.S. 648, 653 (1979) (internal quotation marks omitted). Investigatory traffic stops are akin to the on-the-street encounters addressed in *Terry v. Ohio*, 392 U.S. 1 (1969); accordingly, the same objective standard applies: a police officer may conduct an investigatory traffic stop if the officer has "reasonable suspicion" that a particular person "has committed, is committing, or is about to commit a crime." *Lopez-Soto*, 205 F.3d at 1104.

Officers have reasonable suspicion when "specific, articulable facts . . . together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *Id.* at 1105 (internal quotation marks omitted). The reasonable suspicion analysis takes into account the totality of the circumstances. *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (9th Cir. 2000) (en banc). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

**[2]** A traffic violation alone is sufficient to establish reasonable suspicion. *Whren*, 517 U.S. at 810; *United States v. Willis*, 431 F.3d 709, 714-17 (9th Cir. 2005). In *Whren*, the Court held that, in general, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." 517 U.S. at 810; *Willis*, 431 F.3d at 715 ("*Whren* stands for the proposition that if the officers have probable cause to believe that a traffic violation occurred, the officers may conduct a traffic stop.").**[2]** The Court rejected the petitioner's argument that the standard should be different where "civil traffic regulations" are concerned. *See* 517 U.S. at 810-11.

B.

**[3]** Whether *Whren* applies to *parking* violations under California's civil-administrative enforcement scheme is a matter of first impression in this court. We conclude that it does and that, here, the parking violation justified the investigatory stop of Alvarado's vehicle. In so holding, we note that our conclusion is consistent with the decisions of our sister circuits that

---

**[2]**In *Lopez-Soto*, we considered and rejected the argument that *Whren* altered the standard for traffic stops from "reasonable suspicion" to "probable cause." *See* 205 F.3d at 1104.

have considered *Whren*'s application to parking violations. *See Flores v. City of Palacios*, 381 F.3d 391, 402-03 (5th Cir. 2004); *United States v. Copeland*, 321 F.3d 582, 594 (6th Cir. 2003); *United States v. Thornton*, 197 F.3d 241, 248 (7th Cir. 1999).

**[4]** In 1992, the California Legislature significantly amended the California Vehicle Code ("Vehicle Code") to establish a separate civil administrative scheme for enforcing parking violations. Section 40200(a) mandates that "any" non-misdemeanor parking violation "is subject to a civil penalty" to be enforced through "the civil administrative procedures set forth in this article." Cal. Veh. Code § 40200(a). The new enforcement scheme provides for civil penalties for parking violations and delinquent payments, but no criminal sanctions. *See, e.g.*, *id.* § 40220 ("Collection of unpaid parking penalty . . .").[3] Legislative intent, California court decisions, and the interpretation of the California Attorney General all confirm that parking violations are "[n]o longer . . . treated as infractions within the criminal justice system; instead, they are treated as civil offenses subject to civil penalties and administrative enforcement." *Tyler v. County of Alameda*, 40 Cal. Rptr. 2d 643, 645 (Ct. App. 1995); *see also* Cal. Stats. 1992, c. 1244 § 1(b), 1992 Cal. Adv. Legis. Serv. 1244 (Deering) ("Criminal penalties are not appropriate sanctions for standing and parking violations; and criminal procedures are not necessary for the fair enforcement of those violations."); 82 Op. Att'y Gen. Cal. 47 (1999) (adopting the interpretation in *Tyler*). The Vehicle Code authorizes municipalities to

---

[3]Following the 1992 amendments, parking violations are subject to fines. In instances of delinquent or non-payment, municipalities may assess late payment penalty fines, *see id.* § 40203.5, or, when unpaid penalties exceed $400, may enforce collection through entering a civil judgment, *see id.* §§ 40220, 40221. At no point, however, may a municipality impose penal sanctions. In fact, the 1992 amendment to section 40220 deleted subsection (c)), which allowed the processing agency to "[f]ile a criminal complaint with the court" if fees remained unpaid. *See id.* § 40220, Notes 1992 Amend. (West 2005).

establish parking enforcement agencies and to contract with public and private agencies to process parking citations. *See, e.g.*, Cal. Veh. Code §§ 40200.5, 40200.6. As discussed in detail below, however, California law also allows police officers to enforce parking violations. *See id.* § 40202(a) (outlining how the "peace officer or person authorized to enforce parking laws" must proceed when an unoccupied vehicle is parked illegally); *People v. Hart*, 86 Cal. Rptr. 2d 762, 766 (Ct. App. 1999) (noting that a police officer was authorized to enforce a parking violation where the illegally parked vehicle was occupied).

**[5]** In *Whren*, the Court held that when police have probable cause to believe that a traffic violation has occurred, the decision to stop an automobile is reasonable. 517 U.S. at 810. The defendants in *Whren* argued that, in the context of "civil traffic regulations," the Fourth Amendment standard should be different—namely, that the standard should consider whether a reasonable officer would have made a stop based on the *particular* violation, not whether the officer observed *any* violation. *Id.* The Court rejected this argument. Instead, it held that a traffic violation was sufficient to justify an investigatory stop, regardless of whether (i) the violation was merely pretextual, *id.* at 811-12, (ii) the stop departed from the regular practice of a particular precinct, *id.* at 814-15, or (iii) the violation was common and insignificant, *id.* at 818-19. Thus, under *Whren*, so long as Officers Silver and Chan had reasonable suspicion to believe that Alvarado "violated the traffic code," the stop was "reasonable under the Fourth Amendment [and] the evidence thereby discovered admissible." *Id.* at 819.

Choudhry seeks to distinguish *Whren* on two related grounds. First, he argues that *Whren* does not apply because the reasonable suspicion inquiry centers on criminal activity—that is, he asserts that *Whren* is limited to conduct for which the individual may be arrested. Second, he argues that in California, parking laws are distinct from other traffic laws

because of California's separate civil-administrative scheme for enforcing parking penalties. We find neither argument persuasive.

## 1.

**[6]** In separating civil parking violations and criminal activity, Choudhry reads *Whren* more narrowly than that decision and our circuit law permit. Although the reasonable suspicion inquiry *does* center on suspected criminal activity, *Whren* carves out an exception in the context of traffic stops, i.e., a stop is "reasonable" where an officer suspects an individual has committed a traffic violation. 517 U.S. at 810. *Whren* is not limited to "criminal" traffic code violations. In fact, the case specifically contemplated the opposite: at the outset of its opinion, the Court noted that it was addressing the petitioners' appeal in the scope of "civil traffic violation[s]." *Id.* at 808.[4] The Court explicitly declined to distinguish among different types of traffic code violations, be they standing or moving violations. *See id.* at 818-19. Indeed, we have interpreted *Whren* as applying generally to traffic code violations. *See Willis*, 431 F.3d at 715 (describing *Whren* as sanctioning all stops where the officers have cause to "believe that the petitioner violated the traffic code");[5] *cf. Miranda v. City of Cor-*

---

[4]Choudhry argues that the Court's use of the term "civil" is dicta because the Court did not address whether the specific provisions at issue were criminal or civil. We are not persuaded. At the very least, the inclusion of "civil" at multiple points in *Whren* indicates that the Court viewed the traffic violations as civil offenses and that the Court's reasoning therefore applies to traffic regulations enforced through civil-administrative procedures. *See Whren*, 517 U.S. at 808, 810. Moreover, "[w]e do not treat considered dicta of the Supreme Court lightly." *Montero-Camargo*, 208 F.3d at 1132 n.17.

[5]The dissent in *Willis* did not dispute the majority's interpretation of *Whren*, but disagreed with the court's conclusion that the standard had been met in that case. *See* 431 F.3d at 723 (Fletcher, W., J., dissenting) (noting that in light of *Whren*, "police may make an ordinary 'traffic stop' whenever they have sufficient reason to believe that a traffic law has been violated").

*nelius*, 429 F.3d 858, 864 & n.4 (9th Cir. 2005) (noting that although a "non-criminal" traffic violation did not justify impoundment, it was "sufficient justification for police officers to seize a vehicle for a traffic stop"). Thus, *Whren* does not distinguish between traffic violations enforced through a civil-administrative process and traffic violations subject to criminal enforcement.

2.

Choudhry's argument must turn not on the distinction between civil and criminal traffic violations, but on whether a *parking* violation, which is enforced through a civil-administrative scheme, should be considered a *traffic* violation within the scope of *Whren*. In light of the administrative process used to enforce parking penalties in California, there is some force to Choudhry's argument that parking violations are distinct from criminal traffic infractions. On balance, however, his argument fails. The structure of the California Vehicle Code, the authority of law enforcement officers to enforce the Vehicle Code, and the specific authority granted to San Francisco City and County police officers to enforce the violation at issue lead us to conclude that *Whren* controls Choudhry's case.[6]

[7] Although California has enacted a civil administrative process to enforce parking penalties, it has not removed parking regulation from the division of the Vehicle Code that covers moving traffic violations. *See* Cal. Veh. Code §§ 22500-26. This organizational structure demonstrates that while the legislature intended to decriminalize parking penalties, it still

---

[6]Our analysis here mirrors the analytical framework employed by the Sixth Circuit in *Copeland*. In *Copeland*, the Sixth Circuit held that *Whren* applied to a traffic stop based on a parking violation because the regulation was "set forth under the general traffic laws of the Michigan Vehicle Code" and "officers may enforce any of the regulations subsumed in [the relevant] section by virtue of a stop." 321 F.3d at 594.

considered parking regulation as part of the general "traffic laws." A structural analysis of the Code is informative. The general rules governing parking regulation, as well as the provisions granting local authorities the power to establish parking restrictions pursuant to the Vehicle Code, are contained in Division 11, Rules of the Road. *See* Cal. Veh. Code §§ 22500-26. Among other rules, Division 11 covers moving violations, which include laws governing such matters as turns, stop signs, and vehicle speed. Notably, the Vehicle Code has separate divisions entitled Equipment of Vehicles (Div. 12, §§ 24000-28150), Safety Regulations (Div. 14.8, §§ 34500-20.5), and Drivers' Licenses (Div. 6, §§ 12500-15325). Had the legislature intended to treat parking regulation as entirely distinct from other traffic offenses, it could have separated them in a similar way. Instead, the legislature determined that a separate civil-administrative scheme was the preferred method for processing and enforcing civil penalties for parking violations. To distinguish parking violations from other traffic violations, as Choudhry urges we do, would necessarily require us to rely on logic the Supreme Court considered, but rejected, in *Whren*: that different "types" of traffic violations could be distinguished in justifying a traffic stop. *See Whren*, 517 U.S. at 818-19.

**[8]** Nor does California case law suggest a distinction in the authority to enforce parking and traffic violations under the Vehicle Code; rather, decisions by the California Court of Appeal recognize the general authority of police officers to "detain and cite a person for violating the *Vehicle Code*." *Hart*, 86 Cal. Rptr. 2d at 766 (emphasis added); *see also People v. Brown*, 72 Cal. Rptr. 2d 793, 794 (Ct. App. 1998) ("A police officer may legally stop a motorist he suspects of violating the *Vehicle Code* for the purpose of issuing a citation." (emphasis added)). In *Hart*, the court considered the validity of a detention that occurred during the citation of a driver for a parking violation when the driver was present in the car. The court noted that although the Vehicle Code outlines the procedures for citing an *unattended* illegally parked vehicle,

*see* Cal. Veh. Code § 40202, it does not contain a provision governing the procedures for "giving notice" when an illegally parked vehicle is occupied, *Hart*, 86 Cal. Rptr. 2d at 766. Citing the general authority of police officers to "detain and cite" individuals for Vehicle Code violations, the court held that a detention in such a situation was appropriate. *Id.*[7]

**[9]** Here, the officers had the express authority to enforce this specific parking violation. Alvarado had parked the vehicle in an area designated by signs as a no parking/tow-away zone between the hours of 10:00 PM and 6:00 AM. California Vehicle Code section 22651 allows "[a]ny peace officer . . . engaged in directing traffic or enforcing parking laws and regulations" to remove a vehicle "[w]henever any vehicle is parked or left standing where local authorities, by resolution or ordinance, have prohibited parking and have authorized

---

[7]In Choudhry's attempt to distinguish *Hart*, he misreads the Vehicle Code. First, Choudhry argues that, in *Hart*, the defendant violated a provision found in the "criminal infractions" section of the Vehicle Code (Cal. Veh. Code § 22500(f)), while Alvarado's parking violation fell under section 40200. Alvarado did not *violate* section 40200 or a similar provision, as Choudhry's analysis would suggest. She violated section 32 of the San Francisco Traffic Code. San Francisco derives its authority to restrict "stopping, standing, or parking" on its roads in part from a different provision in the *same* Vehicle Code chapter at issue in *Hart*. *See* Cal. Veh. Code § 22507(a). The parking enforcement scheme covers "any" non-misdemeanor parking violation. *See id.* § 40200. Section 22500(f) is not a misdemeanor. Accordingly, *both* the violations at issue here and in *Hart* are *enforced under* section 40200.7

Second, during oral argument, Choudhry argued that *Hart* is distinguishable because Alvarado violated the San Francisco Traffic Code, not the California Vehicle Code. The distinction Choudhry draws, however, is not supported by the structure of the Vehicle Code. As noted above, the San Francisco Traffic Code provision at issue was adopted pursuant to the Vehicle Code. Section 40000.1 of the Vehicle Code treats violations of the code and violations of laws adopted pursuant to the code similarly: "it . . . constitutes an infraction for any person to violate, or fail to comply with, any provision of this code, or any local ordinance adopted pursuant to this code." Section 40200 places parking violations under the civil enforcement scheme, but otherwise does not alter section 40000.1.

removal of vehicles." Cal. Veh. Code § 22651(n). Section 130 of the San Francisco Traffic Code is such an ordinance: it grants police officers the authority to remove or cause to have removed "any vehicle that is parked or left standing unattended in violation of California Vehicle Code or the San Francisco Traffic Code and where signs are posted giving notice of removal for such a violation." S.F. Traffic Code § 130. Vehicle Code section 22651(n), in combination with the local code provision, confirms that the officers were within their authority to enforce Alvarado's parking violation. Thus, while California utilizes distinct civil procedures to enforce penalties for parking violations, parking regulation nonetheless falls within the scope of *Whren*'s holding.

## IV. CONCLUSION

[10] Because the parking violation alone provided the officers with a sufficient basis to conduct an investigatory stop of Alvarado's vehicle, we need not address the totality of the circumstances analysis on which the district court relied to deny Choudhry's motion. For the above reasons, we agree with the district court that the stop did not violate the Fourth Amendment. We therefore affirm the denial of Choudhry's motion to suppress and his conviction.

**AFFIRMED.**