[No. B223338. Second Dist., Div. One. July 21, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
BRYANT J. BENNETT, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part 2. of the Discussion.

**COUNSEL**

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Blythe J. Leszkay and Shira B. Seigle, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHANEY, J.**—Police officers stopped defendant Bryant J. Bennett because he was illegally parked in a red no parking zone. Following their initial stop of defendant, the officers discovered cocaine base and drug paraphernalia in defendant's car. Defendant was convicted of possession of cocaine base for sale and possession of cocaine base.

Defendant makes two arguments on appeal. First, he claims the trial court improperly denied his motion to suppress evidence found after the officers stopped him. Defendant argues the police officers violated his constitutional rights because they stopped him based only on a parking violation subject to civil (not criminal) enforcement. Second, defendant argues his conviction for

possession of cocaine base must be reversed because it is a necessarily included offense of possession of cocaine base for sale, for which he was also convicted.

Although we disagree with defendant's argument concerning his motion to suppress, we agree that his conviction for possession of cocaine base must be reversed. Accordingly, we affirm in part and reverse in part.

## Background

The relevant facts are not in dispute and are taken primarily from the hearing on defendant's motion to suppress.

Just before 8:00 p.m. on October 10, 2009, two Los Angeles Police Department officers were driving through an area of Los Angeles[1] when they noticed a Lincoln Town Car parked illegally. The Town Car was parked next to a red curb marked as a fire lane—a violation of the Vehicle Code. The officers also noticed that, although the front driver side window was rolled down, the front passenger side window was darkly tinted—also a violation of the Vehicle Code. Defendant was in the driver's seat, and a woman was sitting in the backseat.

1. *Police Ordered Defendant to Stop the Car.*

The officers decided to cite defendant for parking in the fire lane and for having improperly tinted windows. The officers parked their patrol car opposite the illegally parked Town Car, got out, and headed across the street toward the car. They each illuminated the Town Car with a flashlight as well as with their patrol car spotlight. When the officers were about five feet from the driver side of the Town Car, defendant looked at them, put the car in drive and "lurched forward" about three feet. The officers ordered him to stop, which he did.

2. *Defendant Tossed Something to the Car Floor and Police Told Defendant to Get out of the Car.*

Not knowing what defendant would do next, the officers saw him put the car in park, lean forward and toss something onto the driver side floor of the car. At that point, one of the officers told defendant to get out of the car, which he did.

---

[1] Although not mentioned at the hearing on the motion to suppress, one of the officers testified at trial that the area was known for narcotics sales.

### 3. Police Arrested Defendant and Searched Defendant and the Car.

As defendant opened the door to get out of the car, one officer—who had been standing next to the car waiting for defendant—saw what he believed to be rock cocaine in a clear plastic bag on the driver side floor of the car. The officer photographed the bag and its contents and examined them. He then arrested defendant based not on a parking violation, but on the suspected presence of cocaine.

Following defendant's arrest, the officers searched the Town Car and defendant. In the car, they found over 100 clear baggies, an electronic scale, and a razor blade with an off-white substance resembling rock cocaine on the blade. On defendant, they found $57 in cash. Later, the police crime lab confirmed the substance in the bag defendant had tried to hide was indeed crack cocaine.

### 4. Defendant Is Charged, Tried and Convicted.

Defendant was charged with possession of cocaine base for sale (count one) and transportation of cocaine base (count two). As to both counts, it was alleged defendant had suffered three prior convictions within the meaning of Health and Safety Code section 11370.2, subdivision (a), and had served one prior prison term within the meaning of Penal Code section 667.5, subdivision (b).

Defendant moved unsuccessfully to suppress the evidence found in the Town Car. Defendant argued the police had no right to detain him based on his parking violation because it was not a crime, but rather was a violation of the Vehicle Code subject to civil penalties.[2] The trial court continued the hearing on the motion to suppress, allowing defense counsel additional time to research the issue. At the subsequent hearing, defense counsel had nothing to add and the court denied the motion. Defendant went to trial.

The jury convicted defendant of possession of cocaine base for sale (count one). But the jury found defendant not guilty of transporting cocaine base (count two). Instead, the jury convicted defendant of the lesser included offense on count two of possession of cocaine base. The trial court sentenced defendant to a five-year prison term on count one, plus an additional three years based on one of defendant's prior convictions. The court sentenced defendant to three years on count two, but stayed that sentence under Penal Code section 654. Defendant appealed.

---

[2] At the suppression hearing, the judge stated he was "not sure" there was enough evidence to justify the stop based on illegally tinted windows. The parties and the court focused on whether defendant's parking violation—which the evidence established—could justify the stop.

## Discussion

### 1. *Motion to Suppress*

■ Defendant argues the police officers violated his Fourth and Fourteenth Amendment rights when they stopped him because his car was illegally parked in a designated fire lane in violation of Vehicle Code section 22500.1. Defendant claims the officers had no authority to stop him because parking in a fire lane is a noncriminal offense subject only to civil penalties. He does not challenge the searches that followed the stop. Rather, he argues the evidence uncovered during those searches is fruit of the unlawful stop and, therefore, should have been suppressed. We disagree.

#### a. *Standard of Review*

As the parties correctly agree, " '[t]he standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Maury* (2003) 30 Cal.4th 342, 384 [133 Cal.Rptr.2d 561, 68 P.3d 1].)

#### b. *Fourth Amendment and Investigatory Stops*

■ The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . . ." (U.S. Const., 4th Amend.) That right is applicable to states through the due process clause of the Fourteenth Amendment. (*Mapp v. Ohio* (1961) 367 U.S. 643, 654–655 [6 L.Ed.2d 1081, 81 S.Ct. 1684].)

It is well established that a brief stop of a vehicle to pose a question to an occupant constitutes a "seizure" for purposes of the Fourth Amendment. (See, e.g., *Delaware v. Prouse* (1979) 440 U.S. 648, 653 [59 L.Ed.2d 660, 99 S.Ct. 1391] ["stopping an automobile and detaining its occupants constitute a 'seizure' . . . even though the purpose of the stop is limited and the resulting detention quite brief"].)

However, because such a brief stop intrudes on a person's privacy to a lesser extent than does an arrest or other extended detention, it is equally well established that the ordinary probable cause and warrant requirements of the Fourth Amendment do not apply to brief vehicle stops. (See, e.g., *United States v. Brignoni-Ponce* (1975) 422 U.S. 873, 881 [45 L.Ed.2d 607, 95 S.Ct.

2574].) Instead, such investigatory stops are akin to the on-the-street encounters addressed in *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889, 88 S.Ct. 1868]. "[A]ccordingly, the same objective standard applies: a police officer may conduct an investigatory traffic stop if the officer has 'reasonable suspicion' that a particular person 'has committed, is committing, or is about to commit a crime.' " (*U.S. v. Choudhry* (9th Cir. 2006) 461 F.3d 1097, 1100 (*Choudhry*).)

The United States Supreme Court has held that, "[a]s a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." (*Whren v. United States* (1996) 517 U.S. 806, 810 [135 L.Ed.2d 89, 116 S.Ct. 1769] ·(*Whren*).) California courts agree, holding that, when an officer suspects a person has violated or is violating the Vehicle Code, the officer may stop that person for the purpose of issuing a citation. (*People v. Hart* (1999) 74 Cal.App.4th 479, 488 [86 Cal.Rptr.2d 762] (*Hart*) ["An officer may detain and cite a person for violating the Vehicle Code."]; *People v. Brown* (1998)· 62 Cal.App.4th 493, 496–497 [72 Cal.Rptr.2d 793] (*Brown*) [An "officer may legally stop a motorist he suspects of violating the Vehicle Code for the purpose of issuing a citation. The officer may detain the motorist for the period of time necessary to discharge the duties related to the traffic stop."].)[3]

### c. *Vehicle Code Sections 40200 and 40202*

Despite the fact he was illegally parked and violating the Vehicle Code, defendant claims the officers had no authority to stop him. His argument rests on Vehicle Code sections 40200 and 40202. Section 40200 provides in relevant part that "[a]ny violation of any regulation that is not a misdemeanor governing the standing or parking of a vehicle under this code, under any federal statute or regulation, or under any ordinance enacted by local authorities is subject to a civil penalty. The enforcement of those civil penalties shall be governed by the civil administrative procedures set forth in this article." (Veh. Code, § 40200, subd. (a).) Section 40202 sets forth administrative procedures for enforcing civil penalties for violations of the Vehicle Code that are not misdemeanors. Defendant's violation of Vehicle Code section 22500.1 (which prohibits parking in a fire lane) is subject to sections 40200 and 40202. (*Tyler v. County of Alameda* (1995) 34 Cal.App.4th 777, 780 [40 Cal.Rptr.2d 643] ["No longer are parking violations treated as infractions within the criminal justice system; instead, they are treated as civil offenses subject to civil penalties and administrative enforcement."].)

Defendant focuses on subdivisions (a) and (d) of section 40202. Subdivision (a) states that, "[i]f a vehicle is unattended during the time of the

---

[3] The parties do not dispute that law enforcement officers are authorized to enforce the Vehicle Code. (See *Hart, supra*, 74 Cal.App.4th at p. 488; Veh. Code, § 40202, subd. (a).)

violation, the peace officer or person authorized to enforce parking laws and regulations shall securely attach to the vehicle a notice of parking violation . . . ." (Veh. Code, § 40202, subd. (a).) By its express terms, section 40202, subdivision (a) applies to unattended vehicles. It is, therefore, inapplicable here as defendant and another person were in the Town Car while it was illegally parked.

Section 40202, subdivision (d), however, applies both to unattended and attended vehicles. That subdivision states that "[i]f, during the issuance of a notice of parking violation, without regard to whether the vehicle was initially attended or unattended, the vehicle is driven away prior to attaching the notice to the vehicle, the issuing officer shall file the notice with the processing agency. The processing agency shall mail, within 15 calendar days of issuance of the notice of parking violation, a copy of the notice of parking violation or transmit an electronic facsimile of the notice to the registered owner." (Veh. Code, § 40202, subd. (d).)

According to defendant, once he began to leave the scene, subdivision (d) provides the *only* way in which the officers could have cited him for his parking violation—namely, the officers "shall file the notice with the processing agency." (Veh. Code, § 40202, subd. (d).) He argues his noncriminal violation of the Vehicle Code could not justify a stop. We are not persuaded.

### d. *Whren*

Although defendant argues it is inapplicable, we find the Supreme Court's opinion in *Whren, supra,* 517 U.S. 806, applicable and instructive. In that case, police officers in the District of Columbia stopped the driver and passengers of a car based on three traffic code violations: (1) driving at an unreasonable speed, (2) failure to give proper signal when turning the vehicle, and (3) failure to give full time and attention to the operation of the vehicle. (*Whren, supra,* at p. 810 [violations of D.C. Mun. Regs., tit. 18, §§ 2200.3, 2204.3, 2213.4 (1995)].) The defendants argued—unsuccessfully—that, " 'in the unique context of civil traffic regulations,' " probable cause to believe a traffic code violation has occurred is not enough to justify a stop. (517 U.S. at p. 810.)

■ In rejecting the defendants' argument, the Supreme Court refused to distinguish between different types of traffic violations for purposes of finding probable cause. The court held that, "[f]or the run-of-the-mine case, which this surely is, we think there is no realistic alternative to the traditional common-law rule that probable cause justifies a search and seizure." (*Whren, supra,* 517 U.S. at p. 819.) Because "the officers had probable cause to believe that petitioners had violated the traffic code[,] . . . the stop [was] reasonable under the Fourth Amendment." (*Ibid.*)

Defendant argues *Whren* is inapplicable because it involved traffic violations that were "criminal in nature" and that the Supreme Court's use of the term "civil" was merely dicta. For two reasons, we do not agree with defendant's assessment of *Whren*.

First, the Supreme Court framed the issue in *Whren* as "whether the temporary detention of a motorist who the police have probable cause to believe has committed a *civil* traffic violation is inconsistent with the Fourth Amendment's prohibition against unreasonable seizures unless a reasonable officer would have been motivated to stop the car by a desire to enforce the traffic laws." (*Whren, supra*, 517 U.S. at p. 808, italics added.) We think it unlikely that, if the court were in fact considering criminal violations, Justice Scalia, in framing the issue for a unanimous court, would mistakenly and improperly insert the word "civil." And, as is clear from the defendants' own arguments in that case, they were addressing " 'the unique context of civil traffic regulations.' " (*Id.* at p. 810.)

Second, it is not clear, despite defendant's argument to the contrary, that the traffic violations at issue in *Whren* were "criminal in nature." As defendant notes, "driving at an unreasonable speed" in the District of Columbia may be punishable in certain circumstances by imprisonment for up to 90 days. Defendant fails to note, however, that driving at an unreasonable speed in the District of Columbia may also be punishable by a civil fine. Which punishment applies depends on how unreasonably a motorist was speeding. If a motorist is convicted of driving more than 30 miles an hour over the speed limit, the punishment to which defendant refers (possible imprisonment) applies. (D.C. Mun. Regs., tit. 18, § 2200.12.) Notably, however, at the relevant time in *Whren*, sections 2200 and 2600.1 of the District of Columbia regulations imposed "civil fines" for speeding. (*Id.*, former §§ 2200, 2600.1 (1995) [providing for civil fines between $10 and $100 for driving in excess of the speed limit].) It is not clear which punishment applied in *Whren* because the opinion does not indicate how fast the car that was stopped had been driving.

It is clear, however, that the remaining traffic violations at issue in *Whren* were civil infractions and not criminal in nature. At the time, section 2600.1 of the District of Columbia regulations established "civil fines" for "civil infractions," which were distinguished from "major moving violations for which jurisdiction remains in the Superior Court." (D.C. Mun. Regs., tit. 18, § 2600.1 (1995).) The other traffic code violations at issue in *Whren* were covered by this section. (*Ibid.* [failure to give appropriate turn signal punishable by civil fine of $25 and failure to give full time and attention to the operation of the vehicle punishable by civil fine of $25].)

Thus, in light of the Supreme Court's use of the word "civil" at various points in its opinion (*Whren, supra*, 517 U.S. at pp. 808, 810), as well as the civil fines applicable to the traffic code violations at issue in *Whren*, we do not agree with defendant's position that *Whren* does not apply here. Rather, it instructs us that police may stop a motorist who has violated the Vehicle Code, regardless of the type of violation.

### e. *Choudhry*

Although we have been unable to find any California authority addressing this issue, the Ninth Circuit addressed and rejected an almost identical argument in *Choudhry, supra*, 461 F.3d 1097. There, defendant Choudhry had been a passenger in an illegally parked car when two San Francisco police officers conducted an investigatory stop of the car. (*Id.* at p. 1098.) At trial, Choudhry unsuccessfully moved to suppress evidence found in the car following the stop. He argued in part that "a civil parking offense that is enforced through an administrative process could not, standing alone, justify an investigatory stop." (*Ibid.*) On appeal, the Ninth Circuit held the parking violation justified the investigatory stop. (*Id.* at pp. 1098, 1104.)

At the outset, the Ninth Circuit rejected Choudhry's distinction between criminal traffic violations and civil traffic violations. The court explained that, in *Whren*, the Supreme Court refused to distinguish between criminal and civil traffic violations. "*Whren* is not limited to 'criminal' traffic code violations. . . . *Whren* does not distinguish between traffic violations enforced through a civil-administrative process and traffic violations subject to criminal enforcement." (*Choudhry, supra*, 461 F.3d at p. 1102.)

The Ninth Circuit focused its inquiry instead on the distinction between traffic violations and parking violations. The court noted that California law does not distinguish between a police officer's authority to enforce traffic violations as opposed to parking violations. (*Choudhry, supra*, 461 F.3d at p. 1103.) The court held that, "[b]ecause parking infractions constitute traffic violations under California's Vehicle Code and local laws enacted pursuant to the Vehicle Code, and because the officers had the authority to enforce the particular violation at issue, . . . a civil parking violation under California's Vehicle Code falls within the scope of the Supreme Court's decision in *Whren* . . . ." (*Choudhry*, at p. 1098.) Thus, refusing to distinguish parking violations from other traffic violations, the court concluded "the parking violation provided the officers with reasonable suspicion to conduct an investigatory stop of the vehicle." (*Id.* at pp. 1098, 1104.)

Defendant both attempts to distinguish *Choudhry* as well as argue it was wrongly decided. For example, defendant takes issue with the Ninth Circuit's

analysis of the structure of the Vehicle Code. In coming to its conclusion, the *Choudhry* court noted that, when our Legislature amended the Vehicle Code to decriminalize parking violations and to set up a separate civil administrative enforcement scheme for such violations, the Legislature kept parking regulation in the same division of the Vehicle Code that covers moving traffic violations (div. 11, "Rules of the Road"). This structure supported the court's conclusion that the Legislature considers parking regulation as part of the general traffic laws. Defendant here disagrees, claiming the Legislature "clearly" intended to treat parking violations separately from other violations included in division 11. Defendant finds this clear intent in the fact that parking violations are in a separate chapter within division 11 of the Vehicle Code and because the enforcement of penalties for parking violations are governed by civil administrative procedures (Veh. Code, § 40200 et seq.).

■ We are not persuaded and agree with the Ninth Circuit's analysis that "[a]lthough California has enacted a civil administrative process to enforce parking penalties, it has not removed parking regulation from the division of the Vehicle Code that covers moving traffic violations. [Citation.] This organizational structure demonstrates that while the Legislature intended to decriminalize parking penalties, it still considered parking regulation as part of the general 'traffic laws.' " (*Choudhry, supra,* 461 F.3d at p. 1103.)

Defendant also argues the Ninth Circuit improperly relied on *Brown, supra,* 62 Cal.App.4th 493, and *Hart, supra,* 74 Cal.App.4th 479, for the proposition that law enforcement officers may stop motorists who violate the Vehicle Code. Defendant claims the *Choudhry* court wrongly relied on the statement in *Brown* that " '[a] police officer may legally stop a motorist he suspects of violating the *Vehicle Code* for the purpose of issuing a citation.' " (*Choudhry, supra,* 461 F.3d at p. 1103.) Defendant notes that *Brown* dealt with a bicycle being ridden without reflectors and, therefore, is inapplicable to the noncriminal parking violation at issue here and in *Choudhry.* Similarly, defendant argues the Ninth Circuit improperly relied on the statement in *Hart* that an officer may " 'detain and cite a person for violating the *Vehicle Code.*' " (*Choudhry,* at p. 1103.) Defendant notes that, as support for that statement, the *Hart* court relied on *People v. Grant* (1990) 217 Cal.App.3d 1451 [266 Cal.Rptr. 587], which not only predated Vehicle Code section 40202, but also addressed a speeding violation, as opposed to a noncriminal parking violation. Accordingly, defendant claims *Hart* can support neither the Ninth Circuit's decision in *Choudhry* nor the trial court's decision here.

We do not find these factual distinctions meaningful. As discussed above, in light of *Whren* and defendant's violation of the Vehicle Code, the stop was reasonable under the Fourth Amendment.

Defendant claims the Ninth Circuit improperly relied on *Hart* for an additional reason. Although *Hart* involved an illegally parked car that was occupied (as was the case here and in *Choudhry*), the driver in *Hart* did not try to drive away when police officers approached (unlike defendant here and in *Choudhry*). Thus, in *Hart*, the court did not have occasion to apply Vehicle Code section 40202, subdivision (d), which applies when a car is driven away before an officer can issue a parking citation. Defendant notes the Ninth Circuit erred in not discussing section 40202, subdivision (d). He claims subdivision (d) controls here and mandates the "sole procedure" the officers should have taken once defendant began to drive away—namely, "file the notice [of parking violation] with the processing agency." (Veh. Code, § 40202, subd. (d).)

■ This argument is flawed, however, because it does not take into account the principle that, even when an officer violates state law, such conduct does not necessarily violate the Fourth Amendment. The state law inquiry and the constitutional inquiry are distinct. (*People v. McKay* (2002) 27 Cal.4th 601, 610 [117 Cal.Rptr.2d 236, 41 P.3d 59].) "[T]he United States Supreme Court has never ordered a state court to suppress evidence that has been gathered in a manner consistent with the federal Constitution but in violation of some state law or local ordinance. To the contrary, the high court has repeatedly emphasized that the Fourth Amendment inquiry does not depend on whether the challenged police conduct was authorized by state law." (*Ibid.*, fn. omitted.) Rather, the pertinent inquiry is " 'whether the search was reasonable under the Fourth Amendment.' " (*Ibid.*)

As discussed above, the stop here was reasonable under *Whren*. Therefore, even if we were to assume without deciding that the officers violated Vehicle Code section 40202, subdivision (d), our analysis would not change. The stop would remain reasonable under *Whren* and would not violate the Fourth Amendment.

In sum, we are not persuaded by defendant's arguments. We have reviewed *Choudhry* and agree with its holding.

2. *Lesser Included Offense*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## Disposition

Defendant's conviction for possession of cocaine base is reversed. In all other respects, the judgment is affirmed. The trial court is directed to amend

---

\*See footnote, *ante*, page 907.

the abstract of judgment so that it reflects our reversal of defendant's conviction of the lesser included offense under count two. The court is directed to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.

Rothschild, Acting P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 12, 2011, S195830.