Filed 1/30/14  P. v. Smith CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| THE PEOPLE,<br><br>                Plaintiff and Respondent,<br><br>     v.<br><br>ISAM SMITH,<br><br>                Defendant and Appellant. | B251266<br><br>(Los Angeles County<br> Super. Ct. No. BA411801) |

APPEAL from the judgment of the Superior Court of Los Angeles County. Drew E. Edwards, Judge.  Affirmed.

Richard Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson, and Jessica Owen, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Defendant and appellant Isam Smith challenges the trial court's denial of his motion to suppress made pursuant to Penal Code section 1538.5. Defendant pled no contest to a charge of possession for sale of cocaine base following the denial of his motion, and argues on appeal that the trial court erred in failing to suppress the recovery of the cocaine because it was obtained as a result of an unconstitutional search. We conclude the trial court did not err in denying defendant's motion and therefore affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We summarize the material facts germane to our discussion from the testimony received at the preliminary hearing.

In the early evening of May 24, 2013, Los Angeles Police Department officer Robert Olmos was on patrol, in an unmarked patrol car, with his partner. Officer Olmos saw defendant commit two violations of the Vehicle Code while riding a bicycle: crossing an intersection against a flashing no-walk signal and riding on the wrong side of the street. Officer Olmos and his partner detained defendant in a parking lot.

Upon first contact with defendant, Officer Olmos immediately noticed defendant appeared agitated, his legs were shaking, he was slurring his words, he was sweating and he constantly checked over his shoulder, looking back and forth between where Officer Olmos was standing and where his partner was standing. Defendant also urinated on himself. Defendant's demeanor raised "red flags" for Officer Olmos as it was not normal behavior. He believed defendant acted like he had a guilty conscience and may have had something concealed "on his person" so he asked if he did. Defendant did not respond. Officer Olmos then conducted a patdown search of defendant's outer clothing.

In defendant's right front pocket, Officer Olmos felt a bulge. He squeezed it once. The object was hard and felt cylindrical. It did not feel like money and he was unsure of what it was. Officer Olmos asked defendant what he had in his pocket. Defendant said, "it was for personal use. 'Go ahead and get it, you're going to find it anyways.' " Officer Olmos recovered a knotted piece of cellophane which contained what was later confirmed to be 19 individually wrapped pieces of cocaine base or "rock cocaine."

2

Defendant was charged with one count of possession for sale of cocaine base (Health & Saf. Code, § 11351.5). It was further alleged defendant had suffered a prior qualifying strike and had served a prior prison term (Pen. Code, §§ 667, 667.5, 1170.12). Defendant pled not guilty.

At the preliminary hearing, defendant moved to suppress the evidence recovered by Officer Olmos during the patdown search. Officer Olmos was called as a witness and testified to the facts described above. Defendant did not present any evidence. The trial court determined defendant had been lawfully detained and consented to the search, and therefore denied defendant's motion.

Before trial, defendant renewed his motion to suppress. The renewed motion was also denied. Defendant then withdrew his not guilty plea and, pursuant to a plea agreement negotiated with the People, pled no contest to the possession for sale charge. The court sentenced defendant to the agreed-upon low term of three years. Defendant was awarded 145 days of custody credits, and was ordered to pay various fines and fees.

This appeal followed.

## DISCUSSION

Defendant's sole contention is the cocaine seized from his pocket should have been suppressed on the grounds the patdown search that led to its discovery violated his Fourth Amendment right to be free from unreasonable searches and seizures. (*People v. Garry* (2007) 156 Cal.App.4th 1100, 1105.)[1] We are not persuaded.

" 'The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied,

---

[1] The contours of the exclusionary rule are well known: If challenged police conduct is shown to violate the Fourth Amendment " 'the exclusionary rule requires that all evidence obtained as a result of such conduct be suppressed [including] not only what was seized in the course of the unlawful conduct itself--the so-called "primary" evidence [citations]--but also what was subsequently obtained through the information gained . . .-- the so-called "derivative" or "secondary" evidence [citations]. Thus, the "fruit of the poisonous tree," as well as the tree itself, must be excluded.' " (*People v. Mayfield* (1997) 14 Cal.4th 668, 760.)

3

where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]' [Citation.] " (*People v. Weaver* (2001) 26 Cal.4th 876, 924; *People v. Glaser* (1995) 11 Cal.4th 354, 362.) " ' "[T]he power to judge the credibility of witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power. . . ." [Citations.]' [Citation.]" (*People v. Gomez* (2004) 117 Cal.App.4th 531, 537.)

Defendant does *not* dispute Officer Olmos personally witnessed defendant committing two traffic violations and that Officer Olmos therefore had legal grounds for detaining him. Defendant argues that, although Officer Olmos lawfully detained him to issue a citation, there was no legal basis for searching him. Defendant further argues the scope of the search was unconstitutional under *Minnesota v. Dickerson* (1993) 508 U.S. 366 (*Dickerson*) because of the manipulation of the object in defendant's pocket, and that his consent was therefore tainted by the unconstitutional search.

The detention of defendant was lawful and did not offend the Fourth Amendment. An officer may stop an individual who has violated the Vehicle Code and detain that person for a period of time reasonably necessary to discharge his or her duties, including the issuance of a citation. (See *People v. Tully* (2012) 54 Cal.4th 952, 980-981 (*Tully*); *People v. Bennett* (2011) 197 Cal.App.4th 907, 912-913.) Moreover, as the Supreme Court has explained, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." (*Atwater v. City of Lago Vista* (2001) 532 U.S. 318, 354 [affirming summary judgment in favor of respondent officer for arresting driver following a traffic stop for seatbelt violations and finding no Fourth Amendment violation from the officer's conduct]; *People v. McKay* (2002) 27 Cal.4th 601, 607 ["there is nothing inherently unconstitutional about effecting a custodial arrest for a fine-only offense"].)

4

Further, the record contains solid support for Office Olmos's decision to perform a protective patdown search of defendant once he was detained. Routine traffic stops, of the type involved here, have been characterized as similar to a *Terry* stop.[2] (*Berkemer v. McCarty* (1984) 468 U.S. 420, 439.) It is well established that pursuant to a *Terry* stop or detention, an officer may conduct a patdown search of the individual. (*Dickerson*, *supra*, 508 U.S. at pp. 373-374 [where officer reasonably believes a detained individual's suspicious behavior may reflect the individual is armed with a weapon, the officer may conduct a protective search to determine whether the individual is in fact carrying a weapon].)

From the very outset of defendant's lawful detention, he exhibited behavior that raised "red flags" for Officer Olmos. We do not agree with defendant's characterization of his behavior as showing just general nervousness from interacting with police officers. Officer Olmos's testimony established that defendant exhibited a highly exaggerated and disproportionate response to being detained for a traffic violation.

Police officers do not operate in a vacuum, but must make assessments based on any number of diverse and changing circumstances at any given moment. Courts regularly acknowledge that officer safety is a legitimate concern that must be considered in the balance when assessing the contours of the Fourth Amendment. (See, e.g., *Knowles v. Iowa* (1998) 525 U.S. 113, 116-118; see also *People v. Snyder* (1992) 11 Cal.App.4th 389, 393 [Fourth Amendment jurisprudence does not require that "a suspect actually reaches for an apparent weapon" in order to justify the propriety of a limited patdown search or seizure of a suspected weapon]; *People v. Castaneda* (1995) 35 Cal.App.4th 1222, 1229-1230.) And, our Supreme Court has "stressed the importance of taking into account 'the totality of the circumstances' in determining the propriety of an

---

**2** *Terry v. Ohio* (1968) 392 U.S. 1, 30-31 (holding that law enforcement officers may reasonably stop and detain individuals without violating the Fourth Amendment where facts exist supporting a reasonable suspicion that criminal activity has or is about to occur).

investigative stop or temporary detention." (*People v. Souza* (1994) 9 Cal.4th 224, 230, citing *United States v. Cortez* (1981) 449 U.S. 411, 417-418.) Defendant has not persuaded us that the totality of circumstances facing Officer Olmos would not lead a reasonable officer to believe a protective patdown search was appropriate to ensure the safety of the officers and any members of the public nearby.

Moreover, the lawful search did not become impermissible in scope because of Officer Olmos's one brief squeeze of the object. (*People v. Limon* (1993) 17 Cal.App.4th 524, 535-536 [where officer's patdown search "reveals a hard object that might be a weapon the officer is justified in removing the object into view"]; *People v. Lee* (1987) 194 Cal.App.3d 975, 985 ["in order to rule out the presence of a weapon, the officer may have to determine an object's 'weight and consistency' "].) We do not believe that an officer's brief squeeze of a hard object in a suspect's pocket to determine whether it is a weapon is similar to the police behavior that was declared unlawful in *Dickerson*. There, the United States Supreme Court found an officer's repeated manipulation of a small object in a suspect's pocket to be constitutionally infirm, explaining "the officer's continued exploration of [defendant's] pocket after having concluded that it contained no weapon was unrelated to 'the sole justification of the search [under *Terry*:] . . . the protection of the police officer and others nearby.' [Citation.]" (*Dickerson*, *supra*, 508 U.S. at p. 378.)

The facts here are distinguishable. There is no evidence Officer Olmos continued to manipulate the object after the initial touching. Nor is there evidence that his brief touching was enough to assure him the object in defendant's pocket was not a weapon. To the contrary, Officer Olmos testified that after he squeezed the object, he remained unsure of what it might be. Officer Olmos did not then continue to manipulate the object in defendant's pocket or remove it without consent. Instead, Officer Olmos asked defendant what the object was and defendant voluntarily gave his consent for Officer Olmos to remove it. The Fourth Amendment does not require a separate showing of reasonable suspicion to support an officer asking for consent to search during an otherwise valid detention. (*Tully*, *supra*, 54 Cal.4th at p. 982; accord, *People v. Gallardo*

6

(2005) 130 Cal.App.4th 234, 239; see also *People v. Brown* (1998) 62 Cal.App.4th 493, 499-500 [motion to suppress properly denied where suspect detained for traffic violation gave consent to search fanny pack while officer was awaiting results of warrant check].)

Defendant was being detained for lawful purposes and gave his consent to remove the object during the course of a lawful patdown search. There is nothing in the record to suggest either Officer Olmos or his partner was acting aggressively with defendant or otherwise had created an unconstitutionally coercive environment.[3] The record supports a determination that defendant's consent was freely and voluntarily given, and was *not* tainted, as defendant suggests, by an unconstitutional search. Accordingly, the record supports the denial of defendant's motion to suppress.

## DISPOSITION

The judgment of conviction is affirmed.


GRIMES, J.

We concur:

BIGELOW, P. J.


FLIER, J.

---

**3**     The mere fact defendant was detained at the time he gave consent does not preclude a finding of voluntariness for constitutional purposes. (See, e.g., *People v. Monterroso* (2004) 34 Cal.4th 743, 758 [that a defendant is under arrest and in handcuffs, or has not been advised of right to withhold consent, does not automatically preclude finding of voluntariness, but rather, is but one factor to consider in the totality of circumstances].)