

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50297 |
| Plaintiff-Appellee, | D.C. No. 2:14-cr-00642-GW-1 |
| v. | |
| JORGE LOUIS SOLORIO-MENDOZA, | MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Submitted April 13, 2018[**]
Pasadena, California

Before:  SCHROEDER, CLIFTON, and M. SMITH, Circuit Judges.

Appellant Jorge Louis Solorio-Mendoza appeals the district court's denial of

his motion to suppress and the implied denial of his motion to dismiss the

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

indictment. He also appeals the denial of his request for an evidentiary hearing. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

We first review the denial of the motion to suppress. Orders on motions to suppress are reviewed de novo, and the underlying factual findings are reviewed for clear error. *United States v. Zapien*, 861 F.3d 971, 974 (9th Cir. 2017) (per curiam).

Solorio-Mendoza first challenges the legality of the traffic stop. In order to conduct a traffic stop, an officer must have "reasonable suspicion" of illegal activity. *United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006). "A traffic violation alone is sufficient to establish reasonable suspicion." *Id.* (citation omitted). In his incident report, Deputy Leitelt stated that when he drove up beside Solorio-Mendoza's vehicle, Solorio-Mendoza "suddenly and aggressively applied [his] brakes, well below the speed and flow of traffic." By braking so aggressively, Solorio-Mendoza caused a car directly behind him to aggressively brake to avoid a collision. In his report, the deputy noted that Solorio-Mendoza violated section 22400 of the California Vehicle Code, which prohibits driving "upon a highway at such a slow speed as to impede or block the normal and reasonable movement of traffic." Cal. Veh. Code § 22400(a). Given that Solorio-Mendoza slowed down to

2

such an extent that the car behind him was impeded, the deputy had reasonable suspicion to conduct a traffic stop.

Solorio-Mendoza argues that Deputy Leitelt was acting as an unlawful roving patrol, targeting Hispanics. But in *Whren v. United States*, the Supreme Court held that an officer's actual motivations for a traffic stop need not be evaluated if there is legal basis for the stop. *Whren v. United States*, 517 U.S. 806, 813 (1996); *see also United States v. Wallace*, 213 F.3d 1216, 1219 (9th Cir. 2000). Given that there was a legal basis for the stop, we do not need to evaluate the deputy's subjective motivation for conducting the stop.

Solorio-Mendoza also challenges the deputy's decision to prolong the traffic stop so that a narcotics canine could conduct a free air sniff search. An "officer may prolong a traffic stop if the prolongation itself is supported by independent reasonable suspicion." *United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015). Deputy Leitelt reported a strong smell of fabric softener, and he stated that fabric softeners are often used to mask the smell of narcotics. He reported that Solorio-Mendoza's hands were trembling and his voice pitch was raising. Solorio-Mendoza initially stated that the car belonged to "Marcos," when it was really registered to an "Antonio." The deputy stated that it is common for drug traffickers to use vehicles that do not belong to them. He also reported that the Interstate 5 highway

is used by drug traffickers to transport illegal narcotics. Solorio-Mendoza claimed that he drove Marcos to the Los Angeles International Airport, but he did not know where Marcos was going. He also did not know the name of a third individual that had been in the car with him earlier in the day. Given the totality of these circumstances, the deputy had reasonable suspicion to prolong the stop in order to conduct a free air sniff search.

Solorio-Mendoza argues that this case is similar to *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015). But *Rodriguez* does not add anything to the analysis. The Court simply held that an officer may not "prolong[] the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* In *Rodriguez*, a magistrate judge found that a canine sniff search was not independently supported by individualized suspicion. *Id.* at 1616. Here, however, the deputy articulated a number of factors he observed after the initial stop that led him to reasonably suspect criminal activity.

Solorio-Mendoza also challenges the reliability of the dog, Charlie, that alerted to the narcotics found in the trunk of the car. A dog's alert can establish probable cause for a search if there is sufficient evidence of the dog's reliability. *Florida v. Harris*, 568 U.S. 237, 246–47 (2013). The best measure of a dog's reliability comes "in controlled testing environments." *Id.* at 246. Indeed,

"evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Id.* But a formal certification is not necessary. A dog's alert can be trusted "even in the absence of formal certification, if the dog has recently and successfully completed a training program that evaluated his proficiency in locating drugs." *Id.* at 247.

To get his original certification, Charlie completed a 300-hour training course. Thereafter, he and his handler participated in four hours of training per week. Every year since he began working, Charlie has been certified with a passing rate of 100 percent. This background provides sufficient evidence to trust Charlie's alert.

We next review the denial of Solorio-Mendoza's request for an evidentiary hearing. Whether to hold an evidentiary hearing on a motion to suppress is reviewed for abuse of discretion. *United States v. Herrera-Rivera*, 832 F.3d 1166, 1172 (9th Cir. 2016). To obtain an evidentiary hearing on a motion to suppress, a defendant must establish contested issues of material fact. *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000). Solorio-Mendoza submitted a six-paragraph declaration. But that declaration did not dispute any of the facts that led Deputy Leitelt to reasonably suspect Solorio-Mendoza of criminal activity. The district

court therefore did not abuse its discretion in declining to hold an evidentiary hearing.

Finally, we review Solorio-Mendoza's motion to dismiss the indictment on the grounds of selective prosecution.[1] The standard of review is unsettled. We have "employed both a de novo standard and a clearly erroneous standard when reviewing a selective prosecution claim." *United States v. Culliton*, 328 F.3d 1074, 1080 (9th Cir. 2003) (per curiam). We decline to resolve the conflict here because Solorio-Mendoza's arguments fail under either standard of review.

"In our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985) (citations omitted). But "the decision to prosecute may not be 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.* at 608 (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Accordingly, a defendant may move to dismiss an indictment on the grounds of selective prosecution. *See United States v. Mayer*, 503 F.3d 740, 747 (9th Cir. 2007).

---

[1] The district court did not rule on Solorio-Mendoza' motion to dismiss the indictment. The government therefore argues that Solorio-Mendoza waived his motion by failing to renew it. But Solorio-Mendoza is asserting a constitutional right. *See United States v. Armstrong*, 517 U.S. 456, 463 (1996). And the government has not provided clear and convincing evidence that the purported waiver was voluntary, knowing, and intelligent. *See Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (en banc).

"A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463. To "establish a prima facie case of selective prosecution, a defendant must show both (1) that others similarly situated have not been prosecuted, and (2) that the prosecution is based on an impermissible motive." *United States v. Davis*, 36 F.3d 1424, 1432 (9th Cir. 1994) (citation omitted).

Solorio-Mendoza asserts that Deputy Leitelt is more likely to pull over Hispanic drivers than non-Hispanic drivers. The Supreme Court addressed a similar claim in *Armstrong*, where a defendant showed that the Office of the Federal Public Defender represented 24 defendants in 1991 accused of crimes related to cocaine base (crack). *Armstrong*, 517 U.S. at 459. Every one of the 24 defendants was black. *Id.* But the selective prosecution claim failed because the defendant did not identify individuals who were not black and could have been prosecuted for the same offenses. *Id.* at 470.

Solorio-Mendoza seeks to establish his case by citing the percentage of purportedly Hispanic drivers for whom the deputy requested a WANT-9. But it cannot be enough to simply refer to population statistics. In *Armstrong*, 100 percent of the defendants charged were black. That percentage obviously differed

from the percentage of black residents in the state (California). If the implied percentage difference was not enough in *Armstrong*, it cannot be enough here. Solorio-Mendoza needs to identify actual individuals who were of a different race and were treated differently by Deputy Leitelt.

Accordingly, Solorio-Mendoza has not established a prima-facie case of selective prosecution. *See Davis*, 36 F.3d at 1432. Nor has he established a basis to obtain discovery because he was required to present "specific facts, not mere allegations" establishing a colorable basis for his claim. *United States v. Bourgeois*, 964 F.2d 935, 939 (9th Cir. 1992) (denying discovery because defendant made no attempt to show that the government declined to prosecute similarly situated defendants of another race).

**AFFIRMED.**