[No. F028131. Fifth Dist. Mar. 23, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL DEAN BROWN, Defendant and Appellant.

494

## COUNSEL

Joseph B. de Illy, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Shirley A. Nelson and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THAXTER, J.**—Michael Dean Brown pled guilty to one count of possession of methamphetamine (Health & Saf. Code, § 11377) and was placed on probation on the condition he serve 150 days in jail. On appeal he challenges the denial of his motion to suppress evidence pursuant to Penal Code section 1538.5. The issue presented is whether, during a routine traffic stop, an officer may run a warrant check and then question the detainee regarding the detainee's probation status and ask permission to search while waiting for the results of the warrant check. We conclude the officer may. We will affirm.

### FACTS AND PROCEDURAL HISTORY

On November 30, 1996, about 9:40 p.m., Police Officer Randall Bolinger stopped defendant when he observed him riding a bicycle without a light or reflectors on Robertson Road in violation of Vehicle Code section 21201, subdivision (d). Officer Bolinger asked defendant for identification so he could cite him for the traffic infraction if he decided to do so. Defendant produced a California identification card. Bolinger then ran a warrant check, "[s]omething we commonly do when we stop people." The warrant check took about a minute. During that minute, in response to Bolinger's inquiries, defendant stated he was on searchable probation and denied having guns or anything illegal in his fanny pack. Bolinger asked if he could search and defendant replied, "Go ahead." Bolinger found a film canister containing a

usable amount of methamphetamine in defendant's fanny pack before he received the results of the warrant check.

Defendant moved to suppress the drug evidence on the ground his consent to search was the product of an illegal detention. Officer Bolinger exceeded the necessary scope of the stop by questioning him regarding his probation status while running the warrant check, rather than writing up the citation. The magistrate denied the motion, finding defendant was validly detained, the one-minute delay occasioned by the warrant check was reasonable and not unduly intrusive, and defendant freely consented to the search. Defendant renewed his motion in superior court. The trial court also denied the motion, ruling that an officer can run a warrant check any time, any place and for any reason, so long as the check does not infringe the defendant's Fourth Amendment rights. An unreasonable delay of the defendant would be an infringement, but the one-minute delay in this case was not unreasonable.[1]

## DISCUSSION

*Standard of Review*

■ Our standard on appeal from the denial of a motion to suppress is well established. We defer to the trial court's factual findings where supported by substantial evidence, but exercise our independent judgment to determine whether, on the facts found, the search was reasonable under Fourth Amendment standards. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

*Scope and Duration of a Traffic Stop*

■ Under *Terry* v. *Ohio* (1968) 392 U.S. 1, 19 [88 S.Ct. 1868, 1878-1879, 20 L.Ed.2d 889], the judicial inquiry into the reasonableness of a detention is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place. Detention, not questioning, is the evil at which *Terry*'s second prong is aimed. (*U.S.* v. *Shabazz* (5th Cir. 1993) 993 F.2d 431, 436.)

A police officer may legally stop a motorist he suspects of violating the Vehicle Code for the purpose of issuing a citation. The officer may detain

---

[1]The People could have resisted the suppression motion by establishing defendant was on searchable probation and therefore had no reasonable expectation of privacy in his fanny pack. (*People* v. *Bravo* (1987) 43 Cal.3d 600, 608-609 [238 Cal.Rptr. 282, 738 P.2d 336].) However, the record does not reflect whether defendant's statement that he was on searchable probation was true.

the motorist for the period of time necessary to discharge the duties related to the traffic stop. (*People* v. *Grant* (1990) 217 Cal.App.3d 1451, 1458 [266 Cal.Rptr. 587].) Defendant does not dispute that he was validly detained for a traffic violation. Rather, he argues the officer violated the spirit of *People* v. *McGaughran* (1979) 25 Cal.3d 577 [159 Cal.Rptr. 191, 601 P.2d 207] when, rather than writing the citation related to the traffic violation, the officer questioned him about his probation status and requested permission to search while awaiting the results of the warrant check.

*People* v. *McGaughran* addresses the permissible scope and duration of a traffic stop. There, the officer, after stopping a car for a traffic infraction, extended the detention to run an arrest warrant check for the car's occupants. Some 10 minutes later, the officer learned there was an outstanding warrant for the driver. The driver was arrested and the car was searched. (25 Cal.3d at pp. 581-582.) The Supreme Court held that when an officer makes a traffic stop, the officer may temporarily detain the offender at the scene for the period of time necessary to discharge the duties incurred by virtue of the traffic stop. (*People* v. *McGaughran, supra*, at p. 584.) "If a warrant check can be completed within that same period, no reason appears to hold it improper: because it would not add to the delay already lawfully experienced by the offender as a result of his violation, it would not represent any further intrusion on his rights." (*Ibid.*) However, the additional period of detention in *McGaughran* was not "reasonably necessary" to the process of dealing with the initial offense, therefore, it was unconstitutional. (*Id.* at p. 587.)

Similarly, in *Williams* v. *Superior Court* (1985) 168 Cal.App.3d 349 [213 Cal.Rptr. 919], a police officer followed a car in the hope of linking its occupants to reported robberies. When the car ran a stop sign, he pulled it over. He asked the driver for his license and registration, then separated the driver and the passenger and talked to each of them about where they lived and what they were doing in the neighborhood. Finally, he asked the driver if he could search the car. The driver agreed. The search produced cocaine. (*Id.* at pp. 354-356.)

The appellate court held the detention could be justified if the detention period was reasonably necessary for completion of the officer's duties relative to the traffic violation. (*Williams* v. *Superior Court, supra*, 168 Cal.App.3d at p. 357.) The People argued that any detention lasting less than 10 minutes, as in *McGaughran*, was reasonable, but the court disagreed. The import of *McGaughran* was not the setting of a general outside time limit for minor traffic offense detentions. Implicit in the *McGaughran* analysis was a recognition that the circumstances of each traffic detention are unique and that the reasonableness of each detention period must be judged on its

particular circumstances. The clear intent of *McGaughran* was to preclude officers from imposing a general crime investigation upon the detained traffic offender that was not "reasonably necessary" to completion of the officer's traffic citation duties. (*Williams* v. *Superior Court, supra*, at p. 358.)

The court concluded that the officer in *Williams* had promptly obtained all the information he needed to perform his citation duties but then elected not to complete the citation form in the normal course of events. Thus the officer's prolongation of the detention differed in detail but not in kind from the prolongation of the detention in *McGaughran*. The result—unnecessary extension of the traffic detention to investigate extraneous matters—was identical. (*Williams* v. *Superior Court, supra*, 168 Cal.App.3d at p. 359.)

*Routine Warrant Checks*

*McGaughran* and *Williams* indicate that investigative activities beyond the original purpose of a traffic stop, including warrant checks, are permissible as long as they do not prolong the stop beyond the time it would otherwise take. (*People* v. *Bell* (1996) 43 Cal.App.4th 754, 767 [51 Cal.Rptr.2d 115]; accord, *People* v. *Stoffle* (1991) 1 Cal.App.4th 1671, 1679 [3 Cal.Rptr.2d 257] [three- to four-minute detention to run warrant check pursuant to standard police procedure while officer checked the driver's license and the car registration was proper under *McGaughran*].) Thus, the trial court's ruling that law enforcement officers may routinely run warrant checks on traffic infraction detainees, provided the check does not unreasonably prolong the detention, was correct. The government interest in apprehending individuals with outstanding arrest warrants outweighs the minimal inconvenience to that already lawfully experienced by the offender as a result of his or her traffic violation. (Cf. *People* v. *Conway* (1990) 222 Cal.App.3d 806, 815 [271 Cal.Rptr. 832]; *People* v. *Williams* (1995) 33 Cal.App.4th 467, 477 [39 Cal.Rptr.2d 358]; *People* v. *Bouser* (1994) 26 Cal.App.4th 1280, 1285-1286 [32 Cal.Rptr.2d 163].)

*Questions Regarding Matters Unrelated to the Traffic Stop*

Defendant concedes the officer properly ran the warrant check but submits, under *McGaughran* and *Williams*, he was limited to writing up the traffic citation while he waited for the warrant results. He could not conduct a general crime investigation by questioning him on matters unrelated to the vehicle stop.

The *Williams* court stated, "The clear intent of *McGaughran* is to preclude officers from imposing a general crime investigation upon the detained

traffic offender that is not 'reasonably necessary' to completion of the officer's traffic citation duties unless the officer has an independent reasonable suspicion that the driver has committed unrelated offenses." (*Williams* v. *Superior Court, supra,* 168 Cal.App.3d at p. 358.) However, the statement must be read in light of the facts of that case and subsequent United States Supreme Court cases.

In *Williams*, the officer believed that the vehicle's occupants matched the ages and general physical descriptions of the perpetrators of recent local robberies. The prolonged interrogation of the defendants was thus directed solely toward determining their complicity in the armed robberies. It was not "reasonably necessary" to the officer's performance of his duties relative to the traffic violation. (168 Cal.App.3d at p. 359.) The *Williams* case is distinguishable from this case in two important regards. First, there was no unnecessary extension of the traffic detention to investigate extraneous matters in this case. Officer Bolinger questioned defendant about his probation status and requested permission to search while he awaited the results of the warrant check. One minute of generalized questioning during a routine traffic stop is not unreasonable. Second, Bolinger's questions about defendant's probation status did not constitute a general crime investigation. They merely provided the officer with additional pertinent information about the individual he had detained.

██ Questioning during the routine traffic stop on a subject unrelated to the purpose of the stop is not itself a Fourth Amendment violation. Mere questioning is neither a search nor a seizure. (*U.S.* v. *Shabazz, supra,* 993 F.2d at p. 436; accord, *Florida* v. *Bostick* (1991) 501 U.S. 429, 435, 439-440 [111 S.Ct. 2382, 2388-2389, 115 L.Ed.2d 389] [Police may approach a person in a public place and ask potentially incriminating questions and request permission to search without implicating the Fourth Amendment, so long as a reasonable person would understand he or she could refuse to cooperate.].) While the traffic detainee is under no obligation to answer unrelated questions, the Constitution does not prohibit law enforcement officers from asking. (*U.S.* v. *Shabazz, supra,* at p. 437; accord, *People* v. *Bell, supra,* 43 Cal.App.4th at p. 768.)

Obviously, this rule must be applied in light of the companion rule that the length of a detention must be reasonably related in scope to the circumstances which justified the interference in the first place. (*United States* v. *Sharpe* (1985) 470 U.S. 675, 682 [105 S.Ct. 1568, 1573, 84 L.Ed.2d 605]; *People* v. *McGaughran, supra,* 25 Cal.3d at p. 586.) ██ In this case, however, Officer Bolinger requested permission to search the fanny pack while awaiting the results of the warrant check, which arrived in a minute.

Thus, the request to search did not unduly prolong the detention or extend the period justified by the valid traffic stop. Further, nothing in the record suggests that defendant's consent was compelled, and the magistrate found his consent was not coerced. Therefore, since the drugs were found pursuant to a lawful consensual search, the court properly denied the suppression motion.

## DISPOSITION

Affirmed.

Dibiaso, Acting P. J., and Harris, J., concurred.