Filed 4/17/13  P. v. Salinas CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H038074 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1111922) |
| v. | |
| MARK JAMES SALINAS, | |
| Defendant and Appellant. | |

### INTRODUCTION

Defendant Mark James Salinas appeals from an order denying his motion under Penal Code section 1538.5, subdivision (m) to suppress controlled substances seized from his person during a detention for a possible bicycle light infraction.  Defendant contends that his detention was unduly prolonged, resulting in an unreasonable seizure under the Fourth Amendment.  We conclude that the detention was reasonable under the circumstances.  Accordingly, we will affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

City of San Jose Police Officers Dan Stromska and Andre Ribeiro were on foot patrol in downtown San Jose on July 22, 2011.  At approximately 9:39 p.m., they observed a group of five or six individuals gathered in a semi-circle in an alcove by the Meriwest Building on First Street near Santa Clara Street.  As the officers approached the group, they observed defendant straddling a bicycle with no lights, and an open container

of alcohol right behind the group.[1]  Upon closer approach, Officer Stromska observed no lights on the bicycle or any type of device that could be used as a light for the bicycle. Officer Ribeiro observed the alcohol container to be within arm's reach of three or four members of the group, who were seated on the ground.  The men told the officers that they were just "hanging out."  After speaking with defendant for a couple of minutes, Officer Stromska asked him to dismount his bicycle and take a seat with the others in the group.  Officer Stromska made this request because of the bicycle light and open container violations, because defendant was a flight risk on the bicycle, and because the two officers were outnumbered by the group.

While the group remained seated, the officers questioned each person separately. The officers asked each person for identification, and whether he was on probation or parole defendant refused Officer Ribeiro's request to search his backpack.  The officers asked each person whether he was carrying anything illegal, including weapons or anything that would stick or poke them.  The officers ran all members of the group through dispatch to determine probation and parole status, and to check for active warrants.  Because of heavy radio traffic that night, the officers used either the main channel or the back-up channel.  The officers released most of the men after being informed by dispatch that they were not on probation or parole.  At some point, everyone was allowed to leave except defendant and one other individual.  The officers waited for dispatch to inform them regarding defendant's status before searching him or releasing him.  Officer Ribeiro was about to conduct a pat down search of defendant's outer

---

[1] Vehicle Code section 21201, subdivision (d)(1) prohibits a person from operating a bicycle during darkness upon a highway or a sidewalk without "[a] lamp emitting a white light that, while the bicycle is in motion, illuminates the highway [or] sidewalk . . . in front of the bicyclist and is visible from a distance of 300 feet in front and from the sides of the bicycle."

San Jose Municipal Code section 10.12.010 prohibits the consumption of any alcoholic beverage on any public street, sidewalk, alley, or highway within the city limits.

clothing when he was informed by dispatch that defendant was on juvenile probation with search terms.

The parties stipulated that nine to ten minutes elapsed between the time Officer Ribeiro called defendant's identifying information into dispatch and the time he received notification that defendant was on active searchable probation. After receiving this information, Officer Ribeiro searched defendant and found two baggies in his pocket, one containing methamphetamine and the other containing cocaine. The information further alleged one prior strike conviction (Pen. Code, § 667, subds. (b)-(i)).

Defendant moved to suppress evidence pursuant to Penal Code section 1538.5. The trial court relied on the computer-aided dispatch (CAD) log to find that a detention of approximately 20 to 24 minutes occurred in this case. The court noted that the officers asked each person for identification, and whether he was on probation or parole. The court further noted that the officers explained that they were going to pat search everyone for officer safety purposes, and they asked if anyone was carrying any weapons or dangerous objects. The trial court found that it would not be difficult for this serial inquiry to take ten minutes given the number of individuals involved, and that such a detention was not unreasonable. The trial court denied the motion to suppress, concluding that defendant was detained for the bicycle light infraction, but that the detention was reasonable, considering the officers also were conducting an inquiry of the other members of the group for the open container violation. The court further concluded that the time it took dispatch to report back to Officer Ribeiro regarding defendant's probation status was also reasonable.

Defendant later pleaded no contest to the three-count information and admitted the prior juvenile strike. The trial court granted defendant's motion to dismiss the strike pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, and sentenced defendant to two years in state prison. Defendant timely appealed.

## DISCUSSION

### A.     Standard of review

In reviewing a trial court's ruling on a motion to suppress, we defer to the trial court's factual findings where supported by substantial evidence. (*People v. Leyba* (1981) 29 Cal.3d 591, 596-597.) However, we exercise independent judgment to determine whether, on those facts, the search and seizure was reasonable under the Fourth Amendment to the United States Constitution. (*Id.* at p. 597.)

### B.     Defendant's detention was not unduly prolonged

Defendant contends that the trial court erred when it concluded that his detention was reasonable and not unduly prolonged. According to defendant, while his detention was initially lawful, it became unduly prolonged because the officers were not diligent in investigating the possible bicycle light infraction during the course of the detention. We disagree.

The temporary detention of individuals during the stop of a motor vehicle by police constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment, even though the detention is only for a brief period and for a limited purpose. (*Whren v. United States* (1996) 517 U.S. 806, 809-810.) A detention that is prolonged must be supported by appropriate probable cause to be constitutionally valid. (*Dunaway v. New York* (1979) 442 U.S. 200, 212.) There is no set time limit beyond which a detention is automatically deemed "unreasonably prolonged"; instead, each case must be judged on its individual circumstances. (*Williams v. Superior Court* (1985) 168 Cal.App.3d 349, 358.) Police officers may routinely run warrant checks on individuals detained for Vehicle Code violations, provided the check does not unreasonably prolong the detention. (*People v. Brown* (1998) 62 Cal.App.4th 493, 498.) Indeed, "[t]he government interest in apprehending individuals with outstanding arrest warrants outweighs the minimal inconvenience to that already lawfully experienced" by the

detainee.  (*Ibid*.)  Police also may lawfully question a detainee regarding his probation status during a routine traffic stop, and that questioning does not constitute an improper general crime inquiry.  (*Id*., at p. 499.)  Rather, information regarding a detainee's probation status provides the officer with additional pertinent information regarding the person being detained.  (*Ibid*.)

Defendant was one of five or six individuals fraternizing next to an open container of alcohol in the downtown area of San Jose.  It was after dark, and defendant was straddling a bicycle without proper lighting equipment.  As part of their investigation of the open container violation, as well as the investigation of defendant for possible violation of Vehicle Code section 21201, the officers directed all the men to remain seated on the ground.  Each man was questioned individually regarding his identity, and each man's identifying information was run serially through dispatch to determine his probation status, and to identify active warrants.  None of this was improper.  (*Brown*, *supra*, 62 Cal.App.4th at pp. 498-499.)  Apparently, defendant was at the end of the line so he incurred a longer wait than the other individuals.  But the mere order of questioning does not itself make defendant's detention less valid than that of the individuals ahead of him in line.  We conclude that the detention of defendant while the officers questioned the other individuals and then him--a period of 10 to 15 minutes--is not unreasonable in this case.  We further conclude that the additional nine to 10 minute detention of defendant attributable to dispatch obtaining warrant and probation information on a busy Friday night also is not unreasonable.

Defendant relies on *People v. McGaughran* (1979) 25 Cal.3d 577 and *Williams v. Superior Court* (1985) 168 Cal.App.3d 349 to argue that his detention was unreasonable.  In *McGaughran*, a police officer stopped a car going the wrong way on a one-way street.  The officer never intended to cite the driver for the traffic infraction because the road was confusing, it was common for drivers to make the same mistake, and the officer's

practice was to issue warnings instead. (*People v. McGaughran*, *supra*, at p. 585.) Nevertheless, after spending three or four minutes with the defendant and his passenger, who both produced identification to the officer, the officer continued to detain the two while dispatch ran them both for warrants. *McGaughran* held unreasonable the additional period of detention when the officer checked for arrest warrants because it was not "reasonably necessary" to the process of handling the traffic offense. (*Id.*, at p. 587.)

In *Williams*, a police officer, suspecting that the defendant was involved in recent robberies, stopped the defendant's car after he committed a traffic violation. Although the officer promptly obtained all the information needed to prepare a citation, he never commenced writing one. Instead, he began to interview the defendant about the robberies and to investigate matters unrelated to the traffic stop. The court held that the officer's investigation into the robberies unnecessarily extended the traffic detention. (*Williams v. Superior Court*, *supra*, 168 Cal.App.3d at p. 359.) *Williams* explained: "[t]he clear intent of *McGaughran* is to preclude officers from imposing a general crime investigation upon the detained traffic offender that is not 'reasonably necessary' to completion of the officer's traffic citation duties unless the officer has an independent reasonable suspicion that the driver has committed unrelated offenses." (*Id.*, at p. 358.)

The present case is distinguishable from both *Williams* and *McGaughran*. In those cases, the police officer completed his traffic investigation but continued to detain the defendant to investigate matters unrelated to the initial detention. Here, in contrast, Officers Ribeiro and Stromska were not detaining the group, including defendant, after completing their investigation. Rather, in the course of their investigation, the officers were lawfully confirming the identification and probation status of all the men, and each man was promptly released after he was cleared. This inquiry did not constitute an unlawful general crime investigation. (*Brown*, *supra*, 62 Cal.App.4th at p. 498.) Moreover, the fact that the officers did not issue defendant a citation for the bicycle light

infraction does not make defendant's detention unreasonable. The reasonable suspicion to detain defendant was not negated by the officer's decision to abandon the investigation of the Vehicle Code infraction after searching defendant and discovering contraband.

**DISPOSITION**

The judgment is affirmed.[2]

_____
GROVER, J.

**WE CONCUR:**

_____
PREMO, J., Acting P.J.

_____
MIHARA, J.

_____

[2] Because we affirm the trial court's conclusion that the detention was not unduly prolonged, we do not address the Attorney General's alternative bases for upholding the lawfulness of the probation search.