Filed 9/30/14  P. v. Howell CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | F066587 |
| v. | (Super. Ct. No. F10904409) |
| RONNIE EARL HOWELL, | **O P I N I O N** |
| Defendant and Appellant. | |

-ooOoo-

## THE COURT\*

APPEAL from a judgment of the Superior Court of Fresno County.  Wayne R. Ellison, Judge.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Julie A. Hokans, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Poochigian, Acting P.J., Franson, J., and Peña, J.

Defendant Ronnie Earl Howell appeals from the trial court's denial of his *Pitchess*[1] motion, contending the court erroneously determined he failed to establish good cause for an in camera review of a peace officer's personnel file. We affirm.

## PROCEDURAL SUMMARY

On February 14, 2012, the Fresno County District Attorney charged defendant with driving with a blood alcohol level of 0.08 percent or higher (Veh. Code, § 23152, subd. (b);[2] count 1), driving under the influence of alcohol or drugs (§ 23152, subd. (a); count 2), and misdemeanor evading a peace officer (§ 2800.1, subd. (a); count 3). The information also included various special allegations.

Defendant filed a *Pitchess* motion and the People filed an opposition. The trial court denied the motion.

A jury found defendant guilty on all counts, and the trial court found true various allegations. The court sentenced defendant to a total of eight years in prison.

## FACTS

On August 26, 2010, at approximately 12:45 a.m., Police Officers Cowart and Syvongxay were on duty together in a marked patrol vehicle near Fruit Avenue and Kearney Boulevard, an area considered a "hot spot." Cowart noticed a set of taillights "kind of disappearing through the neighborhood." He noticed no other traffic. He attempted to follow the vehicle, just to see what it was doing, even though it had done nothing illegal yet. The vehicle kept turning onto various side streets and Cowart had trouble keeping up without driving excessively fast or dangerously, so he pulled off into some shadows and bushes. As he waited, a dark-colored sedan stopped nearby and

---

[1]    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531; Evidence Code sections 1043 through 1045.

[2]    All statutory references are to the Vehicle Code unless otherwise noted.

2

remained parked with its lights off. Cowart was not sure it was the same vehicle he had seen earlier. Shortly thereafter, the vehicle's lights came back on and the vehicle signaled to make a left turn. Cowart turned on his headlights and came out of the shadows. Suddenly, the vehicle made a right turn while still signaling left. Cowart followed. The vehicle accelerated before making a rather quick turn, and then it swerved slightly. It accelerated and decelerated. It kept swerving slightly and making turns onto residential streets as Cowart followed. Some of the streets had speed bumps. Up to this point, Coward considered the driving poor, but not illegal.

As the vehicle approached Fruit Avenue again, it ran the stop sign at about 15 miles per hour, a violation of the Vehicle Code. At this point, Cowart activated his siren and overhead lights, and he kept them on throughout the remainder of the chase. He stayed about 50 feet behind the vehicle. He could see the driver in his side mirror because the driver's window was open. Cowart made eye contact with the driver, but he still did not stop. Cowart briefly shined his spotlight on the vehicle to get the driver's attention, but the driver drove through the next stop sign as well, this time going about 25 miles per hour. The driver did not slow down, signal, or show any signs of stopping. The driver made a U-turn and eventually stopped near the place Cowart had seen the vehicle 20 minutes earlier. During the entire chase, Cowart never saw another vehicle driving on the roads.

Backup arrived and the officers drew their guns as they asked the driver to get out. They did so because of the suspicious chase, the driver's refusal to stop, and also the gang and drug activity in the neighborhood. Defendant was the driver and only occupant of the vehicle. Cowart asked for his information, patted him down for weapons, then handcuffed him and put him in the back of the patrol vehicle. Cowart quickly noticed that defendant smelled of an alcoholic beverage. Cowart conducted a horizontal gaze nystagmus test. As Cowart worked to verify defendant's information on the telephone,

3

defendant started kicking the rear windows of the patrol vehicle. Cowart told him to stop, but he continued. Cowart opened the door and told him to stop or he would be hobbled.

Officer Dellone of the Traffic Enforcement Division arrived to conduct a thorough driving under the influence investigation. He immediately noticed defendant's moderate odor of alcohol and his red, watery eyes. He removed defendant's handcuffs and performed various field sobriety tests. He concluded defendant was impaired and he placed him under arrest for driving under the influence of alcohol. Dellone told defendant he was required to take a blood or breath test, but defendant refused.

Cowart transported defendant as Dellone followed on his motorcycle. Defendant started kicking the rear windows of the patrol vehicle again, so Cowart pulled over and called a wagon for transport. Defendant was later required to take a blood test, which yielded a result of 0.16 percent blood alcohol, with a margin of error of 0.01 percent. No weapons or contraband were found on defendant or in his car.

## DISCUSSION

### I.    *Law*

On a showing of good cause, a criminal defendant is entitled to discovery of relevant documents or information in the confidential personnel records of a peace officer who is accused of misconduct against the defendant. (*People v. Gaines* (2009) 46 Cal.4th 172, 179 (*Gaines*).) "To initiate discovery, the defendant must file a motion supported by affidavits [or declarations] showing 'good cause for the discovery,' first by demonstrating the materiality of the information to the pending litigation, and second by 'stating upon reasonable belief' that the police agency has the records or information at issue. [Citation.]" (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1019 (*Warrick*).) "If the trial court finds good cause for the discovery, it reviews the pertinent documents in

4

chambers and discloses only that information falling within the statutorily defined standards of relevance. [Citations.]" (*Ibid.*)

The threshold for showing good cause to compel discovery is "'relatively low.' [Citation.]" (*Warrick, supra,* 35 Cal.4th at p. 1019.) Nevertheless, "a showing of good cause requires a defendant seeking *Pitchess* discovery to establish not only a logical link between the defense proposed and the pending charge, but also to articulate how the discovery being sought would support such a defense or how it would impeach the officer's version of events. [The Supreme Court] has long required that the information sought must be described with some specificity to ensure that the defendant's request is not so broad as to garner "'all information which has been obtained by the People in their investigation of the crime'" but is limited to instances of officer misconduct related to the misconduct asserted by the defendant. [Citations.] [¶] This specificity requirement excludes requests for officer information that are irrelevant to the pending charges. (See, e.g., *People v. Hustead*[ (1999)] 74 Cal.App.4th [410,] 416 [prior complaints of excessive force by arresting officer 'irrelevant' after charge of resisting arrest was dropped and remaining charge was evasion of arrest in an automobile].) And it enables the trial court to identify what types of officer misconduct information, among those requested, will support the defense or defenses proposed to the pending charges. This inquiry establishes the statutorily required materiality prong of the good cause showing that a defendant must make to receive in-chambers review of potentially relevant officer records." (*Id.* at pp. 1021-1022.)

"[D]efense counsel's declaration in support of a *Pitchess* motion must propose a defense or defenses to the pending charges. The declaration must articulate how the discovery sought may lead to relevant evidence or may itself be admissible direct or impeachment evidence [citations] that would support those proposed defenses." (*Warrick, supra,* 35 Cal.4th at p. 1024.) "Counsel's affidavit must also describe a factual

scenario supporting the claimed officer misconduct.  That factual scenario, depending on the circumstances of the case, may consist of a denial of the facts asserted in the police report." (*Id.* at pp. 1024-1025.)  "In [some] cases, the trial court hearing a *Pitchess* motion will have before it defense counsel's affidavit, and in addition a police report, witness statements, or other pertinent documents.  The court then determines whether defendant's averments, '[v]iewed in conjunction with the police reports' and any other documents, suffice to 'establish a plausible factual foundation' for the alleged officer misconduct and to 'articulate a valid theory as to how the information sought might be admissible' at trial.  [Citation.]  Although a *Pitchess* motion is obviously strengthened by a witness account corroborating the occurrence of officer misconduct, such corroboration is not required.  What the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents.  [Citations.]" (*Id.* at p. 1025.)

As noted, "[t]o determine whether the defendant has established good cause for in-chambers review of an officer's personnel records, the trial court looks to whether the defendant has established the materiality of the requested information to the pending litigation." (*Warrick, supra,* 35 Cal.4th at p. 1026.)  In analyzing "whether the defendant has established the materiality of the requested information to the pending litigation," the court conducts "the following inquiry:  Has the defense shown a logical connection between the charges and the proposed defense?  Is the defense request for *Pitchess* discovery factually specific and tailored to support its claim of officer misconduct?  Will the requested *Pitchess* discovery support the proposed defense, or is it likely to lead to information that would support the proposed defense?  Under what theory would the requested information be admissible at trial?  If defense counsel's affidavit in support of the *Pitchess* motion adequately responds to these questions, and states 'upon reasonable belief that the governmental agency identified has the records or information from the

6

records ([Evid. Code, ]§ 1043, subd. (b)(3)), then the defendant has shown good cause for discovery and in-chambers review of potentially relevant personnel records of the police officer accused of misconduct against the defendant." (*Id.* at pp. 1026-1027.)

We review a trial court's ruling on a *Pitchess* motion for abuse of discretion. (*People v. Samayoa* (1997) 15 Cal.4th 795, 827.)

## II. *Background*

Defendant's *Pitchess* motion included a declaration by defense counsel (but no police report), which stated in relevant part:[3]

> "5. Officer Sean Cowart prepared a report of the events at Kearney and Fruit on August 26, 2010 and it contains materially false and misleading statements.

> "6. Officer Cowart writes in his report that [defendant] was driving southbound Fruit from Kearney. The officer then writes that the vehicle drove 'erratically throughout the neighborhood.' Based on my investigation and the Officer's other statements as well as a [*sic*] the statements of [defendant], Officer Cowart's statements are false and misleading.

> "7. Officer Cowart's movements as noted in the report make it impossible for him to have observed the driving he claims he observed. He has attempted to hide this fact by use of vague descriptions and placing the vehicle he was interested in in locations that it was not. Officer Cowart also indicates speed fluctuations but omits the fact that numerous sets of speed bumps are present on the streets where he says he observed the driving and account for any fluctuations of speed. Cowart's omission of this point is misleading and his misstatements created probable cause to stop the vehicle where no probable cause existed. [¶] … [¶]

> "9. The requested documents and records are relevant to and necessary for [defendant's] defense to the charges filed against him. The materials are relevant to impeach the People's witnesses at trial and to establish a pattern of misleading and false police reports. The materials

---

[3] These are the portions of the declaration cited in defendant's brief.

will also tend to corroborate defense testimony about what actually occurred that evening."

At the hearing on the *Pitchess* motion, the following occurred:

"[DEFENSE COUNSEL]: Well, Your Honor, I believe that there is sufficient cause established in the declaration. I note that [the City Attorney] argued that a simple denial is not enough, but the authority he cites actually indicates that it is in certain circumstances. If the Court wished additional information, it would be our request to do that in camera, excluding the District Attorney from that end, and the City Attorney, but I believe there is sufficient cause for a Pitches[s] discovery.

"THE COURT: [City Attorney,] want to respond?

"[CITY ATTORNEY]: Yes, Your Honor. Basically there are some circumstances when the police report[] provides additional circumstances that a denial may be sufficient, but in this case it is not. And what he is arguing is to the probable cause that he is arguing against, because the probable cause of the arrest was the running of the stop sign. Nothing to do with the speed bumps. Nothing to do with any of the other allegations in the papers, and we would submit it on our pleadings.

"[DEFENSE COUNSEL]: If I may respond?

"THE COURT: Sure.

"[DEFENSE COUNSEL]: The issue goes beyond just the running of the stop sign. The issue goes to the credibility of the officers. This is a DUI. The observations of driving—erratic driving, these are all critical pieces of the People's evidence at trial.

"[CITY ATTORNEY]: And those are presentable at trial, not in the Pitchess motion.

"THE COURT: Okay then. The Court has read and considered both the motion as well as response by the People. At this time I'm denying the motion. I believe that the defense has failed to make the minimal showing of good cause to obtain said records."

8

### III.    *Analysis*

Defendant contends he established good cause for a review of Officer Cowart's personnel file. Defendant explains that Cowart was the sole testifying witness to defendant's driving. He says Cowart's testimony constituted a substantial part of the evidence for the driving under the influence charges and all of the evidence for the evasion charge. And he maintains that Cowart's credibility was a significant issue and any impeachment evidence would have been material.

To summarize, defense counsel's declaration alleged that (1) Cowart falsely stated defendant was driving southbound on Fruit Avenue from Kearney Boulevard, (2) Cowart falsely stated the vehicle drove erratically through the neighborhood, (3) Cowart falsely stated he observed certain driving because his claimed movements made it impossible for him to have observed it, (4) Cowart falsely stated the vehicle was in certain locations, (5) Cowart failed to state that speed bumps were present and accounted for the vehicle's speed fluctuations, (6) Cowart's misstatements and failure to mention the speed bumps falsely created probable cause to stop the vehicle where no probable cause existed, and (7) Cowart's personnel file was relevant to impeach prosecution witnesses, establish a pattern of false police reports, and corroborate defense testimony about "what actually occurred that evening."

But defense counsel's declaration failed to clearly propose a defense or defenses to the pending charges, never explaining "what actually occurred that evening." The allegations themselves suggested various defenses, such as defendant did not drive erratically or fluctuate in speed, defendant was not in the neighborhood, or defendant was not where Cowart said he was. Yet the declaration does not explain how evidence that Cowart's claims were false would assist defendant's defense against the pending charges. The declaration also failed to provide a complete and specific factual scenario regarding Cowart's alleged misconduct. For example, it failed to explain what facts in Cowart's

9

report made it impossible for him to have observed the driving he claimed he observed or what facts he relied on in his report to create probable cause to stop the vehicle. We thus conclude that defendant's *Pitchess* motion did not establish good cause for the discovery of Cowart's personnel file. The trial court properly exercised its discretion in denying the *Pitchess* motion.

Furthermore, defendant cannot show prejudice. (*Gaines, supra,* 46 Cal.4th at p. 181 [it is settled that an accused must demonstrate that prejudice resulted from trial court's error in denying discovery]; *People v. Memro* (1985) 38 Cal.3d 658, 684 [prejudice required for relief on appeal], disapproved on another point in *Gaines*, at p. 181, fn. 2.) To establish prejudice, defendant must show there was a reasonable probability that the outcome of the case would have been different had information been disclosed to the defense. (*Gaines,* at pp. 182-183.)

First, the discovery defendant sought—which we will call evidence of the falsity of Cowart's claims of erratic driving and speed fluctuations—was not material to the evasion charge (§ 2800.1, subd. (a)), and defendant is incorrect that evidence of his erratic driving and speed fluctuations accounted for all of the evidence on the evasion charge. Under section 2800.1, evading a pursuing police officer requires (in addition to the intentional act) that "(1) The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front and the person either sees or reasonably should have seen the lamp. [¶] (2) The peace officer's motor vehicle is sounding a siren as may be reasonably necessary. [¶] (3) The peace officer's motor vehicle is distinctively marked. [¶] (4) The peace officer's motor vehicle is operated by a peace officer … and that peace officer is wearing a distinctive uniform." (§ 2800.1, subd. (a).) In this case, these required conditions did not exist until defendant ran the first stop sign and Cowart turned on the lights and siren, after which defendant refused to stop. According to Cowart, defendant's erratic driving and speed fluctuations occurred before he ran the stop

10

sign, and thus they were not relevant to the evasion charge. Consequently, evidence of the falsity of Cowart's claims of erratic driving and speed fluctuations would not have resulted in a better outcome for defendant on the evasion charge. (*Gaines, supra,* 46 Cal.4th at pp. 182-183.)

Evidence of the falsity of Cowart's claims of erratic driving and speed fluctuations was also not material to the driving with a blood alcohol level of 0.08 percent or higher charge (§ 23152, subd. (b)). This offense, referred to as "the per se DUI offense," requires no proof of impairment other than a 0.08 percent or higher blood alcohol content. (*People v. McNeal* (2009) 46 Cal.4th 1183, 1193-1194 [if legal limit of blood alcohol is exceeded, § 23152, subd. (b) is violated; no other proof of impairment is required]). Again, evidence of the falsity of Cowart's claims of erratic driving and speed fluctuations would not have resulted in a better outcome for defendant on this charge. (*Gaines, supra,* 46 Cal.4th at pp. 182-183.)

And although evidence of the falsity of Cowart's claims of erratic driving and speed fluctuations was material to the driving under the influence charge (§ 23152, subd. (a); *People v. McNeal, supra,* 46 Cal.4th at p. 1193 [driving under the influence requires proof driver was actually impaired at the time of offense]), defendant cannot show prejudice due to other compelling evidence that he was under the influence of alcohol (see *People v. Samuels* (2005) 36 Cal.4th 96, 110 [if trial court erred in not finding good cause in support of *Pitchess* motion, error was harmless in light of extensive evidence linking defendant to murders]). Defendant's blood alcohol content was 0.16 percent, twice the amount made illegal by section 23152, subdivision (b), and the jury credited this evidence, finding defendant guilty of driving with a blood alcohol level of 0.08 percent or higher. This finding created the presumption that he was under the influence of alcohol. (§ 23610, subd. (a)(3) ["If there was at that time [of testing] 0.08 percent or more, by weight, of alcohol in the person's blood, it shall be presumed

11

that the person was under the influence of an alcoholic beverage at the time of the alleged offense"].) Furthermore, defendant's performance on field sobriety tests, which led Dellone to conclude defendant was under the influence, was even more evidence of his impairment. Accordingly, it is not reasonably probable that evidence of the falsity of Cowart's claims of erratic driving and speed fluctuations would have resulted in a better outcome for defendant on the driving under the influence charge. (*Gaines, supra,* 46 Cal.4th at pp. 182-183.)

As for defense counsel's allegation that Cowart's false statements about the erratic driving speed fluctuations and his failure to mention the speed bumps falsely created probable cause to stop the vehicle where there was no probable cause to do so, any materiality was lost when Cowart testified at trial that (1) many of the streets had speed bumps, and (2) the erratic driving and speed fluctuations were not illegal, and probable cause to stop the vehicle did not arise until the vehicle ran a stop sign in violation of the Vehicle Code.[4] Again, there is no reasonable probability of a better outcome had the information been disclosed. (*Gaines, supra,* 46 Cal.4th at pp. 182-183.)

In sum, we conclude the trial court did not abuse its discretion by not finding good cause to conduct a review of Officer Cowart's personnel file and denying the *Pitchess* motion. Moreover, defendant cannot show he was prejudiced by not receiving the discovery he sought.

## DISPOSITION

The judgment is affirmed.

---

[4] See *Whren v. United States* (1996) 517 U.S. 806, 810 ["the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred"]; *People v. Brown* (1998) 62 Cal.App.4th 493, 496-497 [an "officer may legally stop a motorist he suspects of violating the Vehicle Code for the purpose of issuing a citation"].