Filed 11/24/15  P. v. Mulhall CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C077434 |
| Plaintiff and Respondent, | (Super. Ct. No. CR030809) |
| v. | |
| JOHN JOSEPH MULHALL IV, | |
| Defendant and Appellant. | |

Defendant John Joseph Mulhall IV pled guilty to unlawful transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)),[1] and admitted one prior conviction (§ 11370.2, subd. (c)).  The trial court sentenced him to an aggregate five years in prison.  On appeal, he contends the trial court erred in denying his motion to suppress evidence.  Disagreeing, we shall affirm the judgment.

---

[1] Further undesignated statutory references are to the Health and Safety Code.

1

**FACTUAL AND PROCEDURAL BACKGROUND**

*Evidence from the Suppression Hearing*

At the hearing on the motion to suppress evidence, Lassen County Sheriff's Deputy Rajheim Hunt testified that he was on duty, in a marked patrol car, on June 13, 2013 at approximately 8:34 p.m. He was parked on the side of the road when he noticed a silver Jeep travelling southbound with a malfunctioning driver's side taillight. Hunt stopped the Jeep for a traffic violation.[2] When Hunt approached the Jeep, he observed that the driver's side taillight was functioning; however, red tape was covering the taillight and making it difficult to see. Hunt asked defendant for his driver's license after advising him of the grounds for the stop.

With the driver's license in hand, Hunt walked back to his car and ran a records and warrant check, taking approximately five minutes. Dispatch notified Hunt that defendant had a non-extraditable warrant out of Washington for a parole violation.[3] Hunt walked back to defendant with the intent to ask defendant to "step out from the vehicle to discuss the warrant." Defendant then told Hunt "he knew he had [the warrant], he was working at Little Debbie on Johnstonville Road to pay off some fines." This comment by defendant "kind of threw up a flag" for Hunt, as Hunt knew there was not a Little Debbie located on Johnstonville Road. Hunt also observed that defendant was nervous during that brief conversation. Hunt then asked defendant if he had anything illegal in the car and if he could search the car. Defendant responded, " 'yeah, but I don't see why.' "

---

[2] See Vehicle Code sections 24600 (failure to maintain two working taillights) and 24252 (failure to maintain all lighting equipment in good working order). Defendant does not challenge the validity of the initial traffic stop.

[3] The significance to Hunt of the warrant's classification as non-extraditable was that Hunt could not arrest defendant on the warrant.

Hunt told defendant to stand at the patrol vehicle while he searched the car. During this time, defendant was neither handcuffed nor arrested.

After searching a backpack on the passenger seat, Hunt opened the driver's side door and immediately saw two clear sandwich baggies containing a white crystalline substance protruding from the side door pocket. After further search of the pocket, Hunt found a glass-smoking pipe that he suspected was used to ingest methamphetamine. Hunt continued to search inside the car in which he found, on the driver's side floorboard, another small baggie containing a white substance. Hunt walked back to defendant to ask about the search findings, but defendant claimed he did not have any knowledge of what was in the car. Defendant was handcuffed and arrested for possession of methamphetamine and drug paraphernalia. Hunt estimated the time from turning his lights on to pull defendant over to defendant's arrest as fewer than ten minutes. Subsequent to defendant's arrest, the Narcotics Task Force conducted a second search of the car.

Defendant testified that when Hunt pulled him over, he provided his license to Hunt, after which Hunt walked back to his patrol car. Defendant estimated he waited two or three minutes before Hunt returned. Hunt asked defendant to step out of his car and about the warrant linked to defendant, to which defendant replied that he was going to pay it the next day. Hunt then handcuffed defendant and searched his pockets and car over defendant's protestations. Defendant testified that he did not consent to any search at any time. The trial court allowed the prosecutor to elicit evidence of defendant's multiple prior drug convictions on cross-examination for impeachment purposes.

*Ruling*

The trial court first summarized the testimony, and then focused on the validity of the consent search, summarizing the remaining issue as a "credibility question." In considering the respective credibility of Hunt's and defendant's testimony, the court considered defendant's prior felony convictions for selling and transporting controlled

3

substances and rejected defendant's version of events, finding Hunt's testimony more credible and finding that the search was consensual. The court did not specifically address the timing of the request for consent, but did opine that the initial contact as well as subsequent events leading up to Hunt's request to search defendant were "permissible."

## DISCUSSION

Defendant contends the trial court erred when it denied his motion to suppress evidence, arguing that the detention was unduly prolonged without reasonable cause, resulted in an illegal warrantless search. He adds that his consent was invalid, and, in any event, negated by the unlawful detention. He concludes that the continued search after his arrest was the fruit of the poisonous tree--the illegal detention.

### I

### *Standard of Review*

When ruling on a section 1538.5 motion to suppress, the trial court "must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] [¶] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review." (*People v. Ramos* (2004) 34 Cal.4th 494, 505.) "In reviewing the trial court's denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling, deferring to those express or implied findings of fact supported by substantial evidence." (*People v. Jenkins* (2000) 22 Cal.4th 900, 969.)

### II

### *The Initial Investigatory Detention*

Defendant first contends his detention was unlawfully prolonged because "Hunt continued to detain appellant by retaining his driver's license, ordering him out of his

4

vehicle, and asking to search the jeep." Defendant alleges the validity of the initial stop ended when Hunt had finished investigating the traffic violations and had followed up on the warrant in a conversation with defendant, who had addressed the warrant issue to Hunt's satisfaction.[4]  He argues that by asking defendant whether there was anything illegal in the car and for permission to search, he impermissibly prolonged the stop.  The People respond that "the detention for the traffic violation was ongoing and the two questions did not measurably or unreasonably prolong it."  Neither party mentions Hunt's unimpeached testimony that he grew suspicious of defendant while inquiring about the warrant due to defendant's nervous manner and representation concerning a Little Debbie that he placed in an incorrect location.[5]

The duration of a traffic stop and any subsequent detention should be no longer than is reasonably necessary for the officer to complete traffic-related duties, such as asking for and obtaining a driver's license or identification, explaining the reason for the stop, writing the citation, and obtaining a promise to appear.  (See *People v. McGaughran* (1979) 25 Cal.3d 577, 584; *People v. Miranda* (1993) 17 Cal.App.4th 917, 927; *Williams v. Superior Court* (1985) 168 Cal.App.3d 349, 357-358 (*Williams*).)  A warrant check is "permissible as long as [it does] not prolong the stop beyond the time it would otherwise take."  (*People v. Brown* (1998) 62 Cal.App.4th 493, 498 (*Brown*).)  The reason for this rule "is to preclude officers from imposing a general crime investigation upon the detained traffic offender that is not 'reasonably necessary' to completion of the officer's traffic citation duties unless the officer has an independent reasonable suspicion

---

[4]  At the suppression hearing when asked on cross-examination if he was "satisfied that [he] had addressed the warrant issue with [defendant] sufficiently to satisfy any concerns that [he] had," Hunt responded, "I guess you could say that."

[5]  Hunt later testified that during his search of defendant's car he found a box of snack cakes, consistent with a job at Little Debbie's.  But at the time he asked for consent to search, he had not yet found the cakes.

that the driver has committed unrelated offenses." (*Williams*, at p. 358.) "The government interest in apprehending individuals with outstanding arrest warrants outweighs the minimal inconvenience to that already lawfully experienced by the offender as a result of his or her traffic violation." (*Brown*, at p. 498.)

There is no defined maximum permissible time limit for a stop. We assess the reasonableness of each detention in light of its particular circumstances. (*Williams*, *supra*, 168 Cal.App.3d at p. 358; *Brown, supra,* 62 Cal.App.4th at pp. 498-499; *People v. Russell* (2000) 81 Cal.App.4th 96, 102 (*Russell*).) Circumstances that develop or are discovered during a stop may create reasonable suspicion sufficient to support prolonging the detention. (*Russell*, *supra*, 81 Cal.App.4th at p. 102.) "[T]he question is whether the police diligently pursued a means of investigation reasonably designed to confirm or dispel their suspicions quickly." (*Ibid*.)

Here, circumstances that developed during the stop, namely, defendant's suspicious answer to Hunt's inquiry about the warrant and his nervous manner, created reasonable suspicion sufficient to support prolonging the detention for the limited time that it took for Hunt to request and receive permission to search the car. Prolongation of a detention is permissible even if it is to investigate matters unrelated to an initial traffic stop as long as the duration of the stop is not unreasonably or unduly extended. (See *People v. Gallardo* (2005) 130 Cal.App.4th 234, 238-239.)

Here, the results of the warrant and records check were obtained within a reasonable time, contemporaneous to the license check, thus not unduly extending the detention beyond what was necessary to satisfy protocol and ensure officer safety. After Hunt was told defendant had an outstanding warrant--a valid government interest warranting prompt investigation--Hunt was entitled to ask defendant about it. When receiving defendant's answer as to whether he knew about the warrant, Hunt heard what he thought was incorrect information that "kind of threw up a flag" and also observed that defendant was nervous. Hunt then immediately asked the questions at issue--

whether there was anything illegal in the car and whether he could search it--after this additional contact revealed continued cause for concern. The detention was not unreasonably prolonged.

III

*Consent to Search*

Defendant next briefly argues that he did not consent to the search of his car, and then clarifies his claim to be that he was never found to have *voluntarily* consented by the trial court (although he acknowledges the trial court found he consented). He argues that any consent was involuntary due to his unlawful detention. The People respond that this argument is forfeited as it was not raised in the trial court and then argue cursorily that the consent was valid in any event.

"[I]f defendants have a specific argument *other than the lack of a warrant* as to why a warrant search or seizure was unreasonable, they must specify that argument as part of their motion to suppress and give the prosecution an opportunity to offer evidence on that point." (*People v. Williams* (1999) 20 Cal.4th 119, 130.) "Moreover, once the prosecution has offered a justification for a warrantless search . . . , defendants must present any arguments as to why that justification was inadequate." (*Ibid*.) "Defendants cannot . . . lay a trap for the prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked." (*Id*. at p. 131.)

In his written motion and at the hearing in the trial court, defendant's theory was that he did not consent; he testified and argued that he protested the search and was handcuffed and searched against his will. Defendant never asserted a voluntariness or coercion claim. His claim on appeal is thereby forfeited.

7

*Fruit of the Poisonous Tree*

Defendant's last argument is that the evidence found in the post-arrest search of defendant's car should be suppressed as fruit of the poisonous tree.  However, we have found no merit in defendant's claims of error in the first instance.  Thus, there is no poisonous tree to bear tainted fruit.  Defendant's final claim fails.

**DISPOSITION**

The judgment is affirmed.


                                                        /s/
                                            Duarte, J.



We concur:



      /s/
Nicholson, Acting P. J.



      /s/
Robie, J.