Filed 12/9/15  P. v. Bell CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ERIC DEON BELL,<br><br>    Defendant and Appellant. | C076038<br><br>(Super. Ct. No. 13F05277) |

Following denial of his motion to suppress evidence (Pen. Code, § 1538.5),[1] defendant pled no contest to possession of a firearm by a felon (§ 29800, subd. (a)(1)).  A jury found true one prior strike and three prior prison terms.  The trial court sentenced defendant to the upper term of three years, doubled, plus three years consecutive for the three prior prison terms, for a total of nine years in prison.

---

[1] Further undesignated statutory references are to Penal Code.

On appeal, defendant claims the trial court erred in failing to grant his motion to suppress the evidence found in his car, because the search arose from an unlawfully prolonged detention. Disagreeing, we shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

*Evidence from the Suppression Hearing*

At the suppression hearing, Sacramento Police Department Officer Andy Hall testified as the sole witness. On August 16, 2013, around 7:00 p.m., Hall saw a white van make a left turn without signaling. In a marked patrol car, Hall followed defendant as he made two more left turns without signaling and failed to yield at a stop sign.[2] Hall turned on his patrol car's emergency lights to stop the van. Defendant stopped and began to back up toward the patrol car in an apparent attempt to park. When the van came close to Hall's car, Hall yelled at defendant to stop him from hitting the patrol car. Based on what he had observed of defendant's driving, Hall believed defendant might be driving under the influence of alcohol or drugs. Hall contacted defendant and asked him for a valid license; defendant gave him an identification card instead. Defendant appeared "extremely nervous during the contact," and "seemed like he was forcing laughter."

As Hall returned to the patrol car, at "some point between the time [he] got it and the time [he] ran the [records] check," Hall realized the identification card was not a driver's license. He then ran a records check, which included checking for warrants and criminal history. Defendant's criminal history results revealed at least five prior felony convictions in Sacramento County. His most recent conviction was for an assault on a peace officer and felony resisting, for which he had received a prison sentence of over eight years.

---

[2] See Vehicle Code sections 22107 (failure to signal before changing lanes) and 22450 (requiring a stop at the limit line). Defendant does not challenge the validity of the initial traffic stop or the order to exit the car.

After seeing the priors, Hall wanted to ensure defendant was "in a safer position" by placing him in the backseat of the patrol car before checking into his license status. He came back to the van and asked defendant to step out of the car and for consent to pat him down for weapons. Defendant consented. Hall did not find any weapons on defendant. He was not arrested or handcuffed. Hall then asked defendant if there was anything illegal in the van. Defendant responded he had marijuana in the van and had a (medical) recommendation, but "it wasn't on him at the time." Defendant added that he did not want Hall to search the van. Hall placed defendant in the patrol car, still not handcuffed, and searched the van, finding a loaded .44 magnum handgun. Hall testified that he felt he had probable cause to search the van when he did, given defendant's admission to having marijuana as well as his driving in a manner that suggested he was under the influence.

*Ruling*

The trial court found the initial traffic stop was valid based upon several traffic violations witnessed by Hall; defendant presented no arguments challenging the validity of the traffic stop. The court summarized Hall's testimony and found Hall's safety concerns were reasonable after he learned about defendant's extensive criminal history, which included a prison sentence for assaulting a peace officer and felony resisting. The court opined safety concerns also justified Hall's request for defendant to step out of his car and found the pat down consensual.

Finding Hall's testimony credible, the court commented that Hall intended to verify defendant's driver's license status after he secured defendant in the patrol car. However, defendant's admission that there was marijuana in the van furnished probable cause to search it. Accordingly, the court denied defendant's motion to suppress.

## DISCUSSION

Defendant claims the trial court erred when it denied his motion to suppress evidence, arguing that the initial valid traffic stop was "unlawfully" prolonged through an

3

"irrelevant" criminal history check, pat down, and questioning preceding the illegal car search. He asserts the unlawful detention was the poisonous tree that bore tainted fruit-- the inculpatory statement indicating there was marijuana in the car and the subsequent discovery of the loaded handgun.

## I

### *Standard of Review*

When ruling on a section 1538.5 motion to suppress, the trial court "must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review." (*People v. Ramos* (2004) 34 Cal.4th 494, 505.) "In reviewing the trial court's denial of a motion to suppress evidence, we view the record in the light most favorable to the trial court's ruling, deferring to those express or implied findings of fact supported by substantial evidence." (*People v. Jenkins* (2000) 22 Cal.4th 900, 969.)

## II

### *The Detention and Pat-down Search*

Defendant concedes that his initial detention was valid and that Hall was authorized to order him to step out of the car. Defendant first contends his detention was "unlawfully" prolonged because Hall took actions unrelated to the traffic stop by conducting a criminal history check absent any reasonable basis indicating defendant was involved in criminal activity. Defendant argues Hall was restricted to only issuing a traffic citation and promptly releasing him after the completion of his traffic-related investigation, and Hall's additional investigation extended the detention beyond what was necessary and lawful.

4

We note at the outset that defendant, although arguing that his initial detention was unlawfully *prolonged*, does not provide in his briefing any indication of *the duration of the stop* prior to Hall's search of the van. Nor does the record shed any light on this question. We are left without any evidence as to how long each component of the stop actually lasted, and how much, if any, additional time was added to the stop due to Hall's various investigatory decisions.

There is no defined maximum permissible time limit for a stop. We assess the reasonableness of each detention in light of its particular circumstances. (*Williams v. Superior Court* (1985) 168 Cal.App.3d 349, 358 (*Williams*); *People v. Russell* (2000) 81 Cal.App.4th 96, 102).) Circumstances that develop or are discovered during a stop may create reasonable suspicion sufficient to support prolonging the detention. (*Russell*, at p. 102.) "[T]he question is whether the police diligently pursued a means of investigation reasonably designed to confirm or dispel their suspicions quickly." (*Ibid.*)

A warrant check is "permissible as long as [it does] not prolong the stop beyond the time it would otherwise take." (*People v. Brown* (1998) 62 Cal.App.4th 493, 498.) The reason for this rule "is to preclude officers from imposing a general crime investigation upon the detained traffic offender that is not 'reasonably necessary' to completion of the officer's traffic citation duties unless the officer has an independent reasonable suspicion that the driver has committed unrelated offenses." (*Williams*, *supra*, 168 Cal.App.3d at p. 358; *Brown*, at pp. 498-499.) "The government interest in apprehending individuals with outstanding arrest warrants outweighs the minimal inconvenience to that already lawfully experienced by the offender as a result of his or her traffic violation." (*Brown*, at p. 498.)

Here, during the initial stop and prior to the records check, Hall learned defendant had not provided him with a valid driver's license. Then, in continuing the identification process by running a records check, Hall accessed defendant's record of multiple felony convictions and alarming history of conduct toward law enforcement, resulting in

5

significant prison time.  Defendant had already shown signs of intoxication and extreme nervousness, and had almost backed his van into the patrol car.  In deciding to secure defendant and make sure he was not armed, Hall was entitled to prolong the detention even if it was to investigate matters unrelated to the initial traffic stop as long as the duration of the stop was not unreasonably or unduly extended.  (*People v. Gallardo* (2005) 130 Cal.App.4th 234, 238-239.)  Contrary to defendant's assertion, an unlawful detention results only when it is *unduly* or *unreasonably* prolonged, not merely when it is briefly prolonged due to an emerging unrelated circumstance.

Here, as we have noted, there is *no* evidence that the results of the records check were not obtained within a reasonable time, and no evidence that those results were not obtained within the time a license check would have taken if performed in the first instance.  Thus, the decision to run a records check first when defendant failed to produce a valid license did not *unduly* extend the detention beyond what was necessary to continue the traffic investigation while ensuring officer safety.  The results of the records check certainly justified extending the stop for a consensual pat-down search and a follow-up question as to whether there was anything illegal in the van.  The affirmative answer thereto resulted in probable cause for the search of the van.

Although defendant argues in passing that the pat-down search was not justified, we disagree.  As we have explained, the results of the records check gave Hall ample justification to pat defendant down for weapons whether or not defendant consented, which the trial court found he did, in fact, do.[3]  Hall was also justified in telling defendant to take a seat within the patrol car for officer safety while completing his traffic-related

---

[3]  Under *Terry v. Ohio* (1968) 392 U.S. 1 [20 L.Ed.2d 889], an officer may conduct a reasonable search of a nonarrestee for weapons for the officer's protection if the officer has reason to believe he is dealing with an armed and dangerous individual.  (*Id.* at pp. 26-27 [20 L.Ed.2d at pp. 908-909]; *People v. Scott* (1976) 16 Cal.3d 242, 249.)

6

investigation. When defendant volunteered that he did not want his van searched, Hall asked him one question which resulted in defendant's admission to possessing drugs within the van.

Defendant does *not* argue that defendant's admission did not provide probable cause to search the van, but instead argues cursorily that the search and the gun found as a result were "the fruit of the unlawfully prolonged detention" and "should have been suppressed." However, we have found no merit in defendant's claims of error in the first instance. Thus, there is no poisonous tree to bear tainted fruit. Defendant's final claim fails.

## DISPOSITION

The judgment is affirmed.

/s/
Duarte, J.

We concur:


/s/
Robie, Acting P. J.


/s/
Mauro, J.